In re ARNOLD PRINT WORKS, INC., Debtor.

ARNOLD PRINT WORKS, INC., Plaintiff,

v.

Joseph APKIN and William Apkin d/b/a George Apkin & Sons, Defendant.

Bankruptcy No. 4–81–00532–G.

United States Bankruptcy Court, D. Massachusetts.

Nov. 6, 1985.

Philip J. Hendel, Hendel, Collins & Stocks, P.C., Springfield, Mass., for plaintiff.

---

4. See note 2, *supra*.

Robert C. Ware, Freedman, DeRosa & Rondeau, North Adams, Mass., for defendant.

Office of the U.S. Trustee, Boston, Mass., Trustee.

## MEMORANDUM RE DEFENDANTS' MOTION TO DISMISS OR FOR ABSTENTION

PAUL W. GLENNON, Bankruptcy Judge.

### BACKGROUND

This matter comes before the Court on motion of Joseph Apkin and William Apkin, d/b/a George Apkin & Sons, ("Defendants") to dismiss the Complaint to Compel Turnover ("Complaint") of Arnold Print Works, Inc. ("Arnold Print Works" or "Debtor") or to abstain.

On June 26, 1981, the Debtor filed a voluntary petition in bankruptcy seeking relief under Chapter 11 of Title 11 of the United States Code.[1] Since that time, the Debtor has managed its property as a debtor-in-possession.

During the early part of 1984, the Debtor, as part of an ongoing effort to liquidate remaining assets of its Chapter 11 estate, sold Defendants, who operate a salvage and scrap metal company, copper rollers previously used in the Debtor's business. These copper rollers were resold by Defendants to a smelting company which melted and reprocessed the copper.

In April of 1984, the Debtor and Defendants discussed the sale of additional rollers. Allegedly, in reliance upon Debtor's representations that the rollers were made of copper, Defendants agreed to purchase additional rollers from the Debtor through the Debtor's co-liquidating and disbursing agents. The Debtor alleges that on or about May 8, 1985, the sales transaction took place.

As in the past, Defendants resold the rollers to the smelting company. During the refining process, the smelting company discovered that the rollers were not all copper but included alloys of other metals. The presence of these other metals allegedly caused serious damage to the smelting company's smelter. It, therefore, deducted the amount of its losses from the amount due Defendants. Defendants, in turn, refused to pay the Debtor the agreed upon amount for the rollers.

On April 8, 1985, the Debtor instituted the instant adversary proceeding as a complaint to compel turnover pursuant to 11 U.S.C. §§ 541 and 542. The Debtor alleged that, as of June 17, 1985, Defendants owed the Debtor $20,485.60, and that, at the time the Complaint was filed, Defendants owed the Debtor $9,488.20, $10,997.40 having been paid in the interim by Defendants.

Defendants answered the Complaint on May 9, 1985. They admitted paying the Debtor $10,997.40, but denied all other averments of the Debtor's Complaint. By way of affirmative defenses, Defendants averred that 1) the Court is without jurisdiction because a non-core matter is involved; 2) the Court should abstain from hearing the case because a jury trial is demanded and the action is a common law action governed by state law; 3) Defendants paid the Debtor sums owed, if any; 4) the Debtor breached its contract with the Defendants; 5) the Debtor breached its warranty of merchantability; 6) the Debtor violated M.G.L. Chapter 93A, Section 11 in that it misrepresented the quality of goods sold; 7) the Debtor negligently or intentionally misrepresented the quality of goods sold to the Defendant with the intention of inducing reliance, and Defendants did, in fact, rely on these representations to their detriment; and 8) the Debtor, in any event, waived payment for the goods.

On the same day, Defendants filed a Motion to Dismiss or for Abstention, relying on 28 U.S.C. §§ 157 and 1334. In it, Defendants assert the Court must either

---

1. As a consequence, the Debtor's Chapter 11 proceeding was pending on the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984).

dismiss the Complaint or abstain because a jury trial has been demanded and the proceeding involves a non-core, state law matter with respect to which the Court cannot enter a final judgment. Defendants also suggest that trial of the claim in this Court will violate the constitution in that non-Article III bankruptcy judges are precluded from adjudicating the Debtor's claim.

## DISCUSSION

The issues raised for consideration are: 1) whether the instant proceeding is core or related; 2) whether this Court should abstain; and 3) whether the Bankruptcy Court may conduct a jury trial in these proceedings.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAA"), district courts have original and exclusive jurisdiction of all cases under Title 11. 28 U.S.C. § 1334(a). They have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). Thus, it is important to distinguish among civil proceedings (1) arising under Title 11, (2) arising in cases under Title 11, and (3) related to cases under Title 11. This is so because the determination of whether a proceeding is a core proceeding, and which abstention provision of 28 U.S.C. § 1334(c) applies, depends upon whether the proceeding fits within category (1), (2) or (3). Significantly, the grant of jurisdiction extends over all property of the debtors as of the commencement of the case, and of the estate. 28 U.S.C. § 1334(d).

Under the BAA, district courts are empowered to refer any and all proceedings arising under Title 11 or arising in or relat-ed to cases arising under Title 11 of the United States Code, except for personal injury tort or wrongful death claims, to the bankruptcy judge of that district. 28 U.S.C. § 157(a).[2] Pursuant to this discretionary referral power, all district courts have issued standing reference orders transferring entire bankruptcy dockets to bankruptcy judges. Therefore, this Court, pursuant to § 157(b)(1), may determine matters involved in bankruptcy actions.[3] Notably, however, proceedings related to a case under Title 11, which are referred to bankruptcy judges under Section 157(a) are not included in the language of Section 157(b)(1). This is because core proceedings are proceedings that either arise under Title 11 or arise in a case under Title 11. A civil proceeding related to a case under Title 11 is not a core proceeding and, therefore, cannot be heard and determined by a bankruptcy judge pursuant to 28 U.S.C. § 157(b)(1).

### I

The Debtor characterizes this action as one to recover proceeds from the liquidation of Chapter 11 assets, a core proceeding. Defendants characterize it as one to collect an accounts receivable, a non-core proceeding. Although the Debtor has labeled its complaint a Complaint to Compel Turnover and section 157(b)(3) provides that an order to turnover property to the estate is a core proceeding, "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under Title 11." 28 U.S.C. § 157(b)(3).[4]

---

**2.** Section 157(a) provides: "Each district court may provide that any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

**3.** Section 157(b)(1) provides: "Bankruptcy judges may hear and determine all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11

referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this Title." 28 U.S.C. § 157(b)(1).

**4.** Section 157(b)(3) provides: "A bankruptcy judge shall determine, on the judges own motion or on timely motion of a party, whether a proceeding is a core proceeding that is otherwise related to a case under Title 11. A determination that a proceeding is not a core pro-

No explicit definition of core proceedings exists anywhere in the BAA. As a consequence, an undefined area exists between proceedings arising under or arising in cases under Title 11 and those related to cases under Title 11. Section 157(b)(2) contains fifteen illustrations of core proceedings, including "(A) matters concerning the administration of the estate," "(E) orders to turn over property to the estate," and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2). However, the outer limits of what constitutes a core proceeding must be defined by courts "within the guidelines set forth by the Supreme Court, since the purpose of the amendments was to rectify the unconstitutional jurisdiction found in *Marathon*."[5] *In re Illinois—California Express, Inc.,* 50 B.R. 232, 13 Bankr.Ct.Dec. (CRR) 153 (Bankr.D.Colo.1985).

Courts and commentators are split on whether to adopt a broad or narrow approach to categorizing proceedings as either core or related. In the instant proceeding, the Debtor's Complaint may be viewed several ways: 1) as an action to collect a amount due from the post-petition sale of one of its assets; 2) as an action to collect an account receivable; or 3) as an action predicated on Defendants breach of its contractual obligation to pay for rollers purchased. No matter which way the Complaint is viewed, the proceeding may constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) or (O), if this section is broadly construed.

*In re Franklin Computer Corp.,* 50 B.R. 620, 13 Bankr.Ct.Dec. (CRR) 209, 213 (Bankr.E.D.Pa.1985) is a case factually undistinguishable from the instant proceeding. In that case, an adversary proceeding was initiated by the debtor to collect $15,524.39 in accounts receivable from the post-petition sale of goods. In holding that "disputes on accounts receivable are core matters within the meaning of § 157(b) thus allowing bankruptcy judges to enter final orders theron," the court observed:

> When an entity files for relief under the Bankruptcy Code the debtor in possession or the trustee is required to collect property of the estate for the purpose of liquidation and distribution of this property to creditors or for the funding of a debt repayment plan. When the debtor has been in business a substantial portion of its assets are in the form of accounts receivable. The prompt collection of these assets is often essential to administration of the bankruptcy or reorganization process since the funds represented by the accounts are typically needed to meet the estate's expenses in advancing the administration of the estate.... Since the rapid resolution of this type of litigation is often essential to the sound administration of the estate, § 157(b)(2)(A) weighs in favor of finding that questions on accounts receivable are core matters.

50 B.R. 620, 13 Bankr.Ct.Dec. at 212–13 (citation omitted). *Accord In re Baldwin United Corp.,* 48 B.R. 49, 54 (Bankr.S.D. Ohio 1985) ("[T]he collection of a debtor's accounts receivables and other assets is a critical part of the administration of a bankruptcy estate traditionally pursued in the Bankruptcy Court."); *In re Lion Capital Group* 46 B.R. 850, 859–60 (Bankr.S.D. N.Y.1985) ("The 'prime objective' of bankruptcy 'remain[s] the simple one of getting creditors paid.' ... Administrative matters, turn over proceedings to bring into the estate accounts receivable, insurance proceeds, and other matured debts payable on demand, and adjustment of debtor-equity security holder relationships are crucial to achievement of that goal.")

The Court in *In re Franklin Computer Corp.* also concluded that subsections

---

ceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

5. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

157(b)(2)(E) respecting turnover proceedings and (O), respecting debtor-creditor relationships and the liquidation of assets, also support a finding that collection of an account receivable is a core proceeding. Specifically, it determined that a turnover action is akin to the collection of money notwithstanding its liquid, fungible nature. 50 B.R. 620, 13 Bankr.Ct.Dec. at 213.

The court in *In re Pied Piper Casuals,* 50 B.R. 549, 13 Bankr.Ct.Dec. (CRR) 290 (Bankr.S.D.N.Y.1985), expanded on the concept of core matters embracing turnover proceedings. The issue in that case was whether a proceeding seeking insurance proceeds is a core proceeding where the insurer contests coverage and asserts that the notice condition of the policy has not been met. The court noted " 'an examination of the legislative history compels a broad view of § 542's turnover power.' " 50 B.R. 549, 13 Bankr.Ct.Dec. at 291 *quoting In re Sunrise Equipment and Development Corp.,* 24 B.R. 26, 27 (Bankr.D. Ariz.1982). *Accord In re Baldwin-United, Corp.,* 48 B.R. at 53 ("The words 'to turn over property of the estate' are terms of art in the bankruptcy context, ... and their use by Congress evinces an intention to include all proceedings brought pursuant to 11 U.S.C. § 542 as core proceeding.") Relying on *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985), the court concluded, "[e]ven were an action to recover insurance proceeds not to be strictly construed as a turnover proceeding, there is a significant nexus between such proceedings and bankruptcy considerations which, in light of the similarity, strongly justifies treatment of such actions as core proceedings." 50 B.R. 549, 13 Bankr.Ct. Dec. at 292. In *In re Lion Capital Group,* the Court, in light of *Marathon* and the BAA, stated "[t]he issue of constitutional constraint on the ability of the adjunct bankruptcy court to issue final orders ... requires consideration of the nexus between the purpose sought to be achieved through the exercise of Article I power and the matter over which the court is asked to act." 46 B.R. at 857.

With respect to 28 U.S.C. § 157(b)(2)(O), *In re American of Ashburn, Inc.,* 49 B.R. 926, 13 Bankr.Ct.Dec. (CRR) 93 (Bankr.N. D.Ga.1985) is instructive. In that case, again a situation factually similar to the instant proceeding in that corporate assets were being liquidated, the trustee brought an action to recover pre- and post-petition accounts receivable. The court held that the trustee's complaint was properly before the court and constituted a core proceeding under 28 U.S.C. § 157(b)(2)(O), adding "[a] broad reading of the nonexclusive list of core proceedings found at 28 U.S.C. § 157(b)(2) comports with the Congressional intent to adjudicate such matters 'inextricably tied to the bankruptcy proceeding in the Bankruptcy Courts." 49 B.R. 926, 13 Bankr.Ct.Dec. at 94. *See also In re DeLorean Motor Co.,* 49 B.R. 900, 13 Bankr.Ct.Dec. (CRR) 60 (Bankr.E.D.Mich. 1985). The court emphasized the facts that the chapter 11 case was in a liquidation posture, the trustee had commenced numerous accounts receivable actions in an effort to generate funds for distribution to the debtor's creditors and the trustee was in need of a forum to efficiently litigate the various proceedings.

Thus, contrary to the Defendants position, ample case law exists to support the proposition that collection of a debtor's accounts receivable is a core proceeding. *See, e.g., In re Franklin Computer, Inc.,* 50 B.R. 620, 13 Bankr.Ct.Dec. (CRR) 209 (Bankr.E.D.Pa.1985); *In re All American of Asburton, Inc.,* 49 B.R. 926, 13 Bankr. Ct.Dec. (CRR) 93 (Bankr.N.D.GA 1985); *In re Baldwin United Corp.,* 48 B.R. 49 (Bankr.S.D.Ohio 1985). Likewise, contract claims have been determined to involve property interests of the estate, warranting treatment as core proceedings. *See, e.g., In re Pied Piper Casuals,* 50 B.R. 549, 13 Bankr.Ct.Dec. (CRR) 290 (Bankr.S.D.N.Y. 1985); *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985); *see also Ram Construction, Inc. v. Port Authority of Allegheny Co.,* 49 B.R. 363, 13 Bankr.Ct. Dec. (CRR) 279 (Bankr.W.D.Pa.1985).

The Supreme Court in *Marathon* failed to delineate the extent of state common

law involvement in traditional bankruptcy matters which would convert a core proceeding to a non-core proceeding. Nevertheless, issues involved in litigation to collect account receivables or to collect damages for breach of contract pose no unsettled questions of state law and do not raise issues of comity with the state courts that would preclude their being heard by non-Article III bankruptcy judges. As Judge Goldhaber noted in *In re Franklin Computer Corp.*, "[q]uestions arising under accounts receivable litigation are frequently nothing more than a determination of whether goods received are conforming, whether a simple contract has been breached and the arithmetic calculation of resulting damage." 50 B.R. 620, 13 Bankr.Ct. Dec. at 213. Clearly, that reasoning is applicable hear. Thus, in determining whether collection of an account receivable is core proceeding, this Court, contrary to Defendants' assertions, need not be unduly concerned about the presence of state law issues. *Cf.* 28 U.S.C. § 157(b)(3).

The position of Courts adopting a broad construction of section 157(b)(2), thereby limiting the number of cases determined to be related to cases under Title 11, is aptly summarized by Collier:

> ... careful examination of the opinions in *Marathon* can lead to the conclusion that this category [i.e., civil proceedings related to cases under Title 11] may include only (1) those claims and causes of action which were owned by the debtor at the time of the commencement of the Title 11 case and which became part of the estate under Section 541 of the Code, and (2) actions between third parties such as ... a suit between a creditor and a quarantor of the debtor's debt to the creditor.

I L. *KING, COLLIER ON BANKRUPTCY* ¶ 3.01[2][b][ii] (15th ed. 1985)

The Court is strongly inclined to agree with the aforementioned authorities which suggest that doubt as to core versus non-core status should result in a classification of a matter as core. Were the Court to follow a broad interpretation of section 157,

it would hold that the Debtor's Complaint to Compel Turnover is clearly a core proceeding.

Although authorities previously discussed construe section 157 broadly, other courts have construed section 157 narrowly, reflecting an awareness of *Marathon's* "mandate that the jurisdiction of the bankruptcy courts to determine state law causes of action should be regarded with much circumspection lest constitutional principles be offended." *In re Illinois-California Express, Inc.*, 50 B.R. 232, 13 Bankr.Ct. Dec. at 157.

Indeed, several courts considering the collection of accounts receivable have determined that such an action is a non-core matter. *In re Atlas Automation, Inc.*, 42 B.R. 246, 247 (Bankr.E.D.Mich 1984); *see also In re Schear & Associates, Inc.*, 47 B.R. 544 (Bankr.S.D.Fla.1985); *In re The Franklin Press, Inc.*, 46 B.R. 522 (Bankr.S.D.Fla.1985); *In re Smith-Douglas, Inc.*, 43 B.R. 616 (Bankr.E.D.N.C.1984).

*In re Atlas Automation* was cited with approval by the United States District Court for the District of Massachusetts in *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (Bankr.D.C.D. Mass.1985). In it, the court stated:

> The complaint and counterclaim are based on contract theories. Unless the Court were to read 'orders to turn over property of the estate ...' to include collection of accounts receivable or actions for breach of contract, this case is not a 'core proceeding' as defined by 28 U.S.C. § 157(b)(2). Although money due a Chapter 11 debtor can certainly be described as 'property of the estate' for which the plaintiff is requesting a 'turnover' order [§ 157(b)(2)(E) ], and although this is a proceeding affecting the liquidation of assets of the estate' [§ 157(b)(2)(O) ] in that it is indeed an action to liquidate what at least the debtor perceives to be an asset, to wit: an account receivable, the Court cannot ignore the legislative intent behind the recent enaction of the Bankruptcy Amendments and Federal Judgeship Act of

1984, P.L. 98–353. In light of the fact that this statute was enacted in response to the Supreme Court's holding in ... *Marathon* ... and that that case involved an action similar in legal nature to the case at hand, *i.e.*, a breach of contract action, it is doubtful that Congress intended this type of case to be tried by a bankruptcy court.

42 B.R. at 247.

■ As a result of the foregoing, the Court concludes that, in the interest of avoiding inconsistencies, it must defer to the district court's narrow construction of section 157(b)(2) and find that the instant proceeding is one "related to" a bankruptcy case. Therefore, the Court cannot constitutionally hear and determine the issues presented, except pursuant to 28 U.S.C. § 157(c).

Section 157(c) provides:

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c).

As a result of section 157(c)(1), this Court may retain jurisdiction over the Debtor's Complaint, unless foreclosed to do so by the abstention provisions of 28 U.S.C.

§ 1334(c). However, the Court observes that, given its determination that the proceeding is non-core and that section 157(b)(1) applies, it is technically without jurisdiction to dismiss the Debtor's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure since such an order dismissing the Complaint would be a final order. *Cf. In re Lion Capital Group*, 46 B.R. 850, 854 (Bankr.S.D.N.Y. 1985).

## II

■ Defendants argue that since this is a non-core proceeding involving a state law claim, abstention is mandatory under 28 U.S.C. § 1334(c)(2) or at least within the Court's discretion under section 1334(c)(1). Clearly, the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) is not applicable because the Debtor's bankruptcy case was pending on the date of enactment of the BAA. Section 122(b) of the BAA states that section 1334(c)(2) does not apply to cases under Title 11 that are pending on the date of enactment or to proceedings arising in or related to such cases. Therefore, the Court's decision with respect to abstention is discretionary. *In re Pioneer Development Corp.*, 47 B.R. 624 (Bankr.E.D.Ill.1985);[6] *In re Dakota Grain Systems, Inc.*, 41 B.R. 749 (Bankr.D.N.D.1984). Section 1334(c)(1), which parallels the elective abstention provision of former section 1471(d) of the Bankruptcy Reform Act of 1978, permits the court to abstain in the interest of justice or in respect of state law.

In considering whether to voluntarily abstain, the court in *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr.E.D.Mich.1984), indicated that (1) "the Court is to be guided by what will best assure an economical and expeditious administration of the debtor's estate;" and (2) "[t]he Court should not overlook the fact that what Congress once allowed to be within the bankruptcy judge's discretion is soon to be mandato-

---

6. The Court in that case also concluded that pursuant to the referral provision of 28 U.S.C. § 157, bankruptcy courts have jurisdiction over motions for astention brought under 28 U.S.C. § 1334. 47 B.R. at 628.

ry." 42 B.R. at 248. The Court, therefore, applied the standards for mandatory abstention in 28 U.S.C. § 1334(c)(2). These standards are that: (1) a timely motion is made; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. The Court in *In re Atlas Automation, Inc.,* chose to abstain because of a pending law suit in state court involving identical subject matter.

With respect to the instant proceeding, it is apparent that, absent the bankruptcy proceeding, there would be no federal jurisdiction, there being no diversity of citizenship and an amount in controversy in excess of $10,000. Therefore, had this case not been pending when the BAA was enacted, the Court would be compelled to abstain pursuant to 28 U.S.C. § 1334(c)(2). However, the Court believes that to ensure the economical and expeditious administration of the Debtor's estate and to prevent undue delay, it should hear the case and submit proposed findings of fact and conclusions of law to the district court in accordance with the provisions of section 157(c)(1). This decision is based upon the fact that no action is pending in state court. Indeed, Defendants are unlikely to bring a claim against the Debtor since they have nothing to gain by initiating expensive and time consuming litigation in state court to justify their action in withholding sums allegedly due.

Furthermore, the Court is aware that bankruptcy court decisions are not uniform with respect to the determination of whether the collection of post-petition accounts receivable is core or non-core. This Court has relied on *In re Atlas Automation Corp.,* primarily because the United States District Court for the District of Massachusetts, per Judge Freedman in *Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 466 (Bankr.D.C.D.MA 1985), un-equivocally held that a breach of warranty claim asserted by a Chapter 11 debtor against a third party otherwise unrelated to the bankruptcy proceeding is not a core proceeding, citing the *In re Atlas Automation, Inc.* decision. Although in this instance, breach of contract and warranty claims are asserted as affirmative defenses, and, therefore, should not be determinative of core status, *In re Lion Capital,* 46 B.R. at 860, the Court considers the *Mohawk Industries, Inc.* case which reflects a narrow approach to finding proceedings to be core when breach of contract and tort claims are involved, to be controlling. Indeed, only the breach of contract and misrepresentation defenses, not the Debtor's Complaint, have injected the complexity and delay issues into this proceeding that characterized the action in *Marathon.* Thus, the submission of proposed findings to the district court, will permit that Court to review the *Mohawk* decision and its reliance on *In re Atlas Automation, Inc.* in light of recent authorities such as *In re Baldwin-United Corp.* and *In re Lion Capital Group.*

### III

■ With respect to the jury trial issue, Defendants made a timely demand for jury trial. Obviously, they would be entitled to a jury trial in this action on an account if the proceeding was brought in state court. At least with respect to core proceedings, there is authority that a bankruptcy judge has the implied power to conduct jury trials in all instances when such right exists, except the expressly excluded limited class of personal injury or wrongful death claims. *In re Baldwin-United Corp.,* 48 B.R. at 56; *In re Rodgers & Sons, Inc.,* 48 B.R. 683 (Bankr.E.D.Okla.1985). However, the Court's inability to enter a final judgment, absent the consent of the parties, in this non-core proceeding makes a jury trial impractical. *In re Morse Electric Co.,* 47 B.R. 234 (N.D.Ind.1985).

In consideration of the foregoing, the Court will neither dismiss the Complaint

nor abstain. Rather, it will administer the related proceeding, conduct a non-jury trial on the Complaint, and submit proposed findings of fact and conclusions of law to the District Court for the District of Massachusetts for entry of final judgment.

SO ORDERED.