In re ARNOLD PRINTWORKS, INC., Appellant,

v.

Joseph APKIN and William Apkin, d.b.a. George Apkin & Sons, Appellees.

Bankruptcy No. 4–81–00532–G.

Appeal No. 85–0482–F.

United States District Court, D. Massachusetts.

June 3, 1986.

Philip Hendel, Hendel, Collins & Stocks, Springfield, Mass., for appellant.

Robert C. Ware, Freedman, DeRosa & Rondeau, North Adams, Mass., for appellees.

## MEMORANDUM

FREEDMAN, District Judge.

This appeal from a final order of the Bankruptcy Court, 54 B.R. 562, which declined to abstain in action by debtor in possession to recover account receivable. The District Court, Freedman, J., held that: (1) action was a noncore matter, but (2) bankruptcy court should have abstained.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On June 26, 1981 appellant/debtor ("debtor") filed a petition in bankruptcy court seeking protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.* Debtor has continued to manage its property as a debtor-in-possession since that time.

Appellees/defendants ("defendants") operate a salvage and scrap metal company. In 1984 they entered into several transactions with debtor in which defendants purchased copper rollers previously used in debtor's business. The copper rollers were then resold to a smelting company for reprocessing.

In April or May of 1984, as part of its ongoing efforts to liquidate the remaining assets of its Chapter 11 estate, debtor,

through its co-liquidating and disbursing agent, sold and subsequently delivered to defendants a quantity of rollers represented to be made of copper. Defendants transported the rollers to a smelting plant for refining. Defendants allege that during the refining process, it became apparent that the rollers were not pure copper. The presence of other substances in the rollers caused damage to the smelting company's equipment. The smelting company withheld a sum from amounts due to defendants to compensate for the damage.

As of June 17, 1984 there remained an outstanding balance due from defendants of $20,485.60. On June 18, 1984 defendants paid debtor $10,997.40 but refused to pay the remaining balance of $9,448.20, deducting this amount as compensation for the losses incurred as a result of the impure rollers.

On April 8, 1985 debtor filed a Complaint to Compel Turnover in the bankruptcy court to recover $9,488.20 from defendants. Defendants filed an answer setting forth a general denial and raising the affirmative defenses of misrepresentation and breaches of contract and warranty. Defendants also filed a motion to dismiss or for abstention and made a timely demand for a jury trial on all issues.

Bankruptcy Judge Glennon conducted a pretrial conference and hearing on defendants' motions on May 2, 1985. The judge entered a Memorandum and Order on November 6, 1985 holding that the proceeding before him was not a core matter, but merely one related to the Chapter 11 proceedings, 54 BR 562. The Judge nevertheless refused to dismiss the complaint or to abstain and denied defendants' request for a jury trial. Instead, Judge Glennon held that the bankruptcy court would administer the related proceeding, conduct a non-jury trial on the complaint and submit proposed findings of fact and conclusions of law to the district court for the entry of final judgment.

## II. DISCUSSION

■ The bankruptcy judge's determination that this case involved a non-core mat-
ter involves a question of law over which this court has plenary appellate review power. 28 U.S.C. § 158. *See Local 369, Utility Workers Union of America, AFL-CIO v. Boston Edison Co.*, 588 F.Supp. 800, 806 (D.Mass.1984), *aff'd* 725 F.2d 1 (1st Cir.1984).

The starting point in understanding the present statutory scheme of core and non-core matters as it pertains to this case is *Northern Pipeline v. Marathon Pipe Line, Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Before the *Marathon* Court was the question of whether the 1978 Bankruptcy Act, Pub.L. 95–598, 92 Stat. 2549 (effective October 1, 1979), unconstitutionally vested judicial functions in non-article III judges.

The facts in *Marathon* can be simply stated. Northern Pipeline filed a petition for reorganization in the bankruptcy court in January 1980. In March of that year, Northern initiated a suit in the bankruptcy court against Marathon Pipe Line for breaches of contract and warranty, misrepresentation, coercion and duress. Marathon moved in the bankruptcy court to dismiss on the ground that the delegation of authority to the bankruptcy court to adjudicate the matter was contrary to article III of the Constitution. The district court reversed the bankruptcy court's denial.

After rejecting the possibility that the 1978 Act should be construed as creating legislative courts, 458 U.S. 63–76, 102 S.Ct. at 2867, 2874, the plurality considered whether the bankruptcy courts were "merely an 'adjunct' to the district court," seized with the ability to make factfinding without adjudicating "private rights." *Id.* at 77, 102 S.Ct. at 2874. The plurality accepted the validity of Congress' power to bestow factfinding powers to an adjunct only insofar as the rights being so adjudicating are created by federal statutes. Nevertheless, state-created rights, such as those asserted by Northern Pipeline, could not, the Court held, be finally adjudicated by a non-article III court.

The concurring opinion of Justice Rehnquist joined by Justice O'Connor, rested on somewhat narrower grounds than the plurality. Justice Rehnquist indicated he would hold that "so much of the Bankruptcy Act of 1978 as enables a bankruptcy court to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Article III of the United States Constitution." *Id.* at 91, 102 S.Ct. at 2881. Justice Rehnquist's terse reasoning is notable:

> From the record before us, the lawsuit in which Marathon was named defendant seeks damages for breach of contract, misrepresentation, and other counts which are the stuff of the traditional acts at common law tried by the courts at Westminister in 1789. There is apparently no federal rule of decision provided for any of the issues in the lawsuit; the claims of Northern arise entirely under state law. No method of adjudication is hinted, other than the traditional common-law mode of judge and jury. The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that court.

*Id.* at 90, 102 S.Ct. at 2881.

Both the plurality and concurring opinions rejected the view that as long as "some degree of appellate review" of the bankruptcy orders was provided, article III concerns are satisfied. *Id.* 86 n. 39, 102 S.Ct. at 2879 n. 39 (Brennan, J. plurality opinion); *Id.* at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring).

In response to *Marathon*'s invalidation of the 1978 Bankruptcy Act, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 codified at 28 U.S.C. §§ 151 *et seq.*[1] Of particular interest is the distinction, found in 28 U.S.C. § 157,[2] between core and non-core proceedings, the purpose for which was to remedy the constitutional defects found to exist in the 1978 Act.

Under Section 157(b), bankruptcy judges are empowered to "hear and determine" all core proceedings arising under title 11 or arising in a case under title 11, and to enter

---

[1]. In the interim between *Marathon* and the enactment of the 1984 Act, the bankruptcy court system operated under a Model "Emergency Rule" proposed by the Judicial Conference of the United States and adopted as local rules by the district courts. *See* 1 King, *Collier on Bankruptcy,* (hereinafter *"Collier"*) ¶ 3.01[1][b][v–vi] (1985).

[2]. Section 157 provides in pertinent part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

. . . .

(E) orders to turn over property of the estate;

. . . .

(*O*) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

. . . .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

"appropriate orders and judgments" subject to district court review. No explicit definition of "core proceedings" is provided; however, the statute does contain a non-exhaustive list of fifteen illustrated core proceedings. Of interest in this case are "(A) matters concerning the administration of the estate"; "(E) orders to turn over property of the estate"; and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

A bankruptcy court's power with respect to non-core proceedings, "that is one otherwise related to a case under title 11," is rather more limited. Under section 157(c), a bankruptcy judge can only submit proposed findings of fact and conclusions of law subject to *de novo* review by the district court.[3]

The statute is also silent as to a clear definition of a related or non-core proceeding. Discovering such a definition is crucial because Congress attempted to meet the *Marathon* Court's constitutional concerns primarily by adopting the core/non-core dichotomy.

Generally, according to *Collier*, in light of *Marathon* and the legislative history of the 1984 Act, the term "related proceedings" should refer to two situations: (1) causes of action owned by a debtor that became property of the estate under section 541; and (2) suits between third parties which affect the administration of the title 11 case. *Collier*, ¶ 3.01[1][c][iv]. Underlying these two situations is the theoretical justification that "looks to whether the proceeding in question could have been brought absent a case under the Code.... Such a formulation is not only in accordance with the cases, but seems to comport with the notions of the constitutional mandate set out in *Marathon*." *Id.*[4]

The courts that have considered the question of whether a debtor-in-possession's contract action is a core or non-core matter have yielded a decisive split. In several cases,[5] bankruptcy courts have adopted a very expansive definition of "core proceedings." Such a reading would support core status for the instant case, treating it as an action concerning the administration of an estate, 28 U.S.C. § 157(b)(2)(A); one to turn over property of the estate of a proceeding, 28 U.S.C. § 157(b)(2)(E); or one "affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O). On the other hand, in another line of cases,[6] bankruptcy courts have adopted a narrow construction of what can fit within the ambit of a core proceeding.

**3.** In actuality, this is only one of four possible manners in which a non-core proceeding may be determined. In addition to referring a non-core matter to the bankruptcy court for proposed findings subject to *de novo* review, the district court may decline to refer the matter to the district court at all under section 1334(b) which grants original, but not exclusive, jurisdiction to the district court. In addition, a court may abstain from hearing the proceeding because of the mandatory or discretionary abstention provision of the statute, 28 U.S.C. §§ 1334(c)(1)–(2). Finally, the parties may consent to have the matter determined as if it were a core matter by the bankruptcy court under Section 157(c)(2). *See generally, Collier,* ¶ 3.01[2][d].

**4.** As noted above, in the crucial concurring opinion in *Marathon,* this was precisely the analysis used by Justice Rehnquist. *See supra* at 522.

**5.** *See, e.g., In re Wood,* 52 B.R. 513 (Bankr. N.D.Ala.1985); *In re Alloy Metal Wire Works, Inc.,* 52 B.R. 39 (Bankr.E.D.Pa.1985); *In re L.A. Clarke and Son, Inc.,* 51 B.R. 31 (Bankr.D.D.C. 1985); *In re Pied Piper Casuals,* 50 B.R. 549 (Bankr. S.D.N.Y.1985); *In re American Ashburn, Inc.,* 49 B.R. 926 (Bankr.N.D.Ga.1985); *In re De-Lorean Motor Co.,* 49 B.R. 900 (Bankr.E.D. Mich.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.,* 48 B.R. 1006 (Bankr.S.D.N.Y.1985); *In re Baldwin-United Corp.,* 48 B.R. 49 (Bankr.S.D. Ohio 1985); *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y. 1985).

**6.** *See, e.g., In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H.1985); *State Bank of Lombard v. Chart House, Inc.,* 46 B.R. 468 (Bankr.N.D.Ill.1985); *In re Smith-Douglas, Inc.,* 43 B.R. 616 (Bankr.E.D.N.C.1984); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich. 1984); *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bankr.D.N.D.1984).

Last year this Court had occasion to consider whether to give section 157(b)(2) a narrow or a broad construction and held that a proceeding on a contract was a non-core proceeding. *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass.1985). The facts of *Mohawk* are as follows: Debtor was under contract to supply the Defense Department with general purpose tents. Defendant furnished debtor with zippers for those tents and allegedly warranted their conformity with federal specifications. When federal officials received the tents, they claimed the zippers did not conform, making the tents unacceptable. As a result debtor was forced to accept a lower purchase price. Debtor thereupon sued the defendant in bankruptcy court for breach of express and implied warranties. Relying predominantly on *In re Atlas Automation, supra,* this Court held that the matter was a non-core proceeding.

Debtor now seeks to have this Court either reconsider and overrule *Mohawk* in light of recent contrary authority or to limit the holding to the facts of that case. Although the Court agrees with debtor that the Court has the power to overrule *Mohawk* consistent with the concept of *stare decisis,* it declines to do so.

Several of the decisions relied on by debtor (and by the bankruptcy court) as manifesting the "better" view of the scope of the non-core concept, have been harshly criticized by *Collier.*[7] By contrast, *Mohawk* and another case holding that a breach of contract action cannot be characterized as falling under the concept of a core proceeding, *In re Morse Electric Co.*, 47 B.R. 234 (Bankr.N.D.Ind.1985), are characterized as

"[m]ore reasoned." *Collier,* ¶ 3.01[2][b][iii].

Somewhat more persuasive is debtor's attempt to distinguish this case from *Mohawk.* Debtor points out the following factual differences:

First, the instant case is a matter involving a debtor's collection of post-petition accounts receivable in the context of a liquidating Chapter 11 rather than the pursuit of a complex and extended state law contract, warranty and misrepresentation claim, as was the case in both *Mohawk* and *Marathon....* Second, the defendants in the case *sub judice,* not the Debtor as in *Mohawk,* have interjected the element of state law complexity into the case through their assertion of the extensive array of contract, warranty and misrepresentation. Finally, ... only the defendants (rather than both parties as in *Mohawk* ) have requested a jury trial.

Appellant's Brief at 10. The Court is not convinced that these factual "distinctions" are that material.

Debtor's first alleged distinction, that this is an accounts receivable action rather than a state contract or warranty claim, represents only a semantic argument. This so-called action to compel turnover of accounts receivable can also easily be characterized as a Uniform Commercial Code seller's action to recover on a contract for the sale of goods. *See* Mass.Gen.Laws ch. 106, § 2–703. It is, to the Court's mind, a state law action to the same degree as in *Mohawk* and *Marathon.* To quote from Justice Rehnquist's concurrence in *Marathon:* "[t]he lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganiza-

---

**7.** Specifically, cases finding that section 157(b)(2)(E), concerning "orders to turn over property of the estate" encompasses such proceedings as an action on a promissory note pursuant to a stock purchase plan, *In re Baldwin-United Corp., supra,* or to an action to recover retentions on a construction contract, *In re Harry C. Partridge, Jr. & Sons, Inc., supra,* are, in the view of *Collier,* incorrectly decided because they use section 157(b)(2)(E) to expand the jurisdiction of the bankruptcy court beyond

what is permissible under *Marathon. Collier,* ¶ 3.01[2][b][iii].

A similar, unwarranted expansion of section 157(b)(2)(*O* ), concerning the broad category of "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," *In re Lion Capital Group, supra,* and *In re DeLorean Motor Co., supra,* are both considered by *Collier* to be incorrectly decided. *Id.*

tion in that court." 458 U.S. at 90, 102 S.Ct. at 2881 (Rehnquist, J. concurring). *See also Collier*, ¶ 3.01[1][c][iii].

■ Nor is the Court persuaded by the fact that it was defendants which interjected "complexities" of state law into the proceeding and which demanded a jury trial. The essential thing about the Supreme Court's holding in *Marathon*, is that it is not phrased in terms of fundamental unfairness to the rights of one party or of a party being forced to litigate in a court against his wishes. Rather, it goes to the heart of article III of the Constitution and the very basic principle that only judges invested with the mantle of article III status have the *power* to affect the substantial state-created rights of litigants, with or without their consent.[8] In short, the Court holds that it is irrelevant which party interjected state law complexity into a proceeding and which party made a jury demand. To the extent *In re Lion Capital, supra,* holds otherwise, the Court disagrees with it.

■ The Court therefore concludes that the decision of the bankruptcy court that this proceeding is a non-core matter is correct.

In its cross appeal, defendants object to the bankruptcy court's refusal to abstain from hearing the case, the denial of defendants' request for a jury trial, and its intention to issue proposed findings of facts and conclusions of law for *de novo* review by the district court pursuant to 28 U.S.C. § 157(c)(1).

There are two abstention provisions in the current bankruptcy statute. Under 28 U.S.C. § 1334(c)(1), a district court *may* abstain "in the interest of justice, or in the interest of comity with State courts or re-

spect for State law...." Under section 1334(c)(2), however, abstention is mandatory in non-core matters "with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section." In such a case, the district court *must* abstain "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." Section 122(b) of the Act makes mandatory abstention inapplicable to proceedings which were pending on the date of enactment of the Act, July 10, 1984. Because this action was pending on July 10, 1984, the bankruptcy court correctly held that the mandatory abstention provision was inapplicable.

■ Although the statute by its terms applies only to the district court, it appears that the initial decision to abstain *vel non* should be made by the bankruptcy judge, subject to review by the district court. *In re Pioneer Development Corp.*, 47 B.R. 624 (Bankr.E.D.Ill.1985); *Collier*, ¶ 3.01[3][a].

In deciding whether or not to exercise its discretionary power to abstain, the bankruptcy court quoted approvingly from *In re Atlas Automation, supra.* In that case, the court indicated that a court should be guided by what would best assure "an economical and expeditious administration of the debtor's estate" but should not "overlook the fact that what Congress once allowed to be within the bankruptcy judge's discretion is soon to be mandatory." *Id.* 42 B.R. at 248.

■ The bankruptcy court decided not to abstain despite the fact that absent the pending bankruptcy proceeding, there would be no basis for federal jurisdiction,[9]

---

**8.** This is, of course, not to cast doubt on section 157(c)(2) which authorizes the district court to refer a related (non-core) proceeding to a bankruptcy court for the entry of a final order with the consent of all the parties. While it is true that parties cannot consent to subject matter jurisdiction that is otherwise lacking, this section presents no such jurisdictional problem because it is the district court, seized with its

subject matter jurisdiction, that is referring the matter to the bankruptcy court for final adjudication.

**9.** It is clear that there is no diversity of citizenship or an amount of controversy in excess of $10,000.

and had this action not been pending at the date of the Amendment's enactment, abstention would be required. The bankruptcy court believed that to ensure the economical and expeditious administration of debtor's estate, it should not abstain.

This decision was based on two factors: First, there was no action pending in state court and defendants were unlikely to bring a claim against debtor since they had nothing to gain by initiating expensive and time-consuming litigation to justify their action in withholding sums allegedly due. Second, the court desired to give this Court the opportunity to reconsider its decision in *Mohawk Industries, Inc., supra.*

The fact of this appeal has already given the Court the opportunity to review the holding in *Mohawk* and to affirm its continued validity. That there is not a state case pending is relevant, but to the Court's mind, not dispositive. Though it is true that defendants have little incentive to bring a lawsuit, they being in possession of funds withheld and allegedly due, there is nothing to prevent *debtor* from utilizing the courts of the Commonwealth to collect on the debt it believes it is owed. Further, in light of the relative newness of the adversary proceeding, and the apparent availability to the parties of a state procedure, the policy of an expeditious handling of this matter is not likely to suffer.

The Court, therefore, holds that the bankruptcy court erred in not exercising its discretion in abstaining from hearing this matter.

### III. CONCLUSION

For the reasons stated herein, the judgment of the bankruptcy court should be affirmed in part and reversed in part. The Court will retain jurisdiction over this matter for sixty (60) days during which debtor or defendants may institute an action in state court.

An appropriate Order shall issue.