In re MIKE BURNS INN, INC., Debtor.

In re Michael John BURNS, Debtor.

Michael John BURNS and Mike Burns Inn, Inc., Plaintiffs,

v.

MASSACHUSETTS PROPERTY INSUR-ANCE UNDERWRITING ASSOCIA-TION and Albert J. Minevitz d/b/a Frank P. Richardson Insurance Agen-cy, Defendants.

Bankruptcy Nos. 85–01310–JG, 85–01311–JG.

Adv. No. 86–1221.

United States Bankruptcy Court, D. Massachusetts.

March 4, 1987.

Geraldine L. Brotherton, Marullo & Barnes, Boston, Mass., for plaintiffs.

Daniel C. Cohn, Fine & Ambrogne, Boston, Mass., for Massachusetts Property Ins. Underwriting.

Richard E. Quinby, Craig & Macauley, Boston, Mass., for Frank P. Richardson Ins. Agency.

MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

BACKGROUND

On November 19, 1985, Mike Burns Inn, Inc. and Michael John Burns (collectively the "Debtors") filed petitions for relief un-

der Chapter 11 of the Bankruptcy Code. On August 21, 1986, they commenced this adversary proceeding against the Massachusetts Property Insurance Underwriting Association (the "Fair Plan") and Albert J. Minevitz d/b/a Frank P. Richardson Insurance Agency ("Richardson"). At the time the adversary was commenced, the Debtors had filed a joint disclosure statement and a joint plan of reorganization. The Debtors' plan of reorganization, which has not yet been approved by the Court, is predicated upon the total liquidation of the Debtors' assets. Specifically, proceeds from the sale of the Debtors' primary asset, the restaurant and inn located at 407 Nantasket Avenue, Hull, Massachusetts, which was sold in the spring of 1986, will be used to fund the Debtors' plan.

The complaint, which was amended as a matter of right on September 19, 1986, contains two counts. Count I, captioned breach of contract, alleges that the Fair Plan unlawfully refused to make payment to the Debtors under an insurance policy insuring the Debtors' property against risks, including fire. The Debtors obtained the insurance policy in February, 1986, approximately two and a half months after their bankruptcy petitions were filed. The Debtors subsequently sought compensation under the policy for losses sustained from a fire that occurred at the Debtors' premises on March 3, 1986. The fire damaged, but did not destroy, the inn.

Count II of the complaint, captioned deceit, alleges that Richardson, who arranged for the Debtors to obtain the policy from the Fair Plan, negligently or intentionally failed to disclose to the Fair Plan the Debtors' arrearages on taxes and mortgage payments with knowledge that such failure would cause the Fair Plan to deny coverage for the Debtors' loss in the event of fire.

The Fair Plan responded to the Debtors' complaint with three motions: 1) a Motion for a Determination Under 28 U.S.C. § 157(b)(3);[1] 2) a Motion to Dismiss; and 3) a Motion for Abstention. In a similar vein, Richardson filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction over the Subject Matter and for Failure to State a Claim Upon Which Relief Can Be Granted, and, in the Alternative a Request for Abstention Pursuant to 28 U.S.C. § 1334(c)(1).

A pre-trial hearing was held on October 9, 1986, at which time the Defendants' motions were considered. With respect to the section 157(b)(3) motion, the Court ruled from the bench, at least with respect to the Debtors' breach of contract claim, that the proceeding was a core proceeding. The Court also denied the motions to dismiss and took the motions to abstain under advisement.

The defendants filed notices of appeal to the district court from this Court's bench order denying their motions to dismiss. At a subsequent hearing on the Debtors' Motions to Strike the Notices of Appeal, held on November 13, 1986, the defendants agreed to take no action with respect to their appeals until the Court issued an opinion on the motions to abstain. In view of the present posture of the case, the Court intends to reconsider its determination that this proceeding is a core proceeding, as well as to decide the abstention issue.

## DISCUSSION

Subsection (a) of section 1334 of title 28 vests the district courts with original and exclusive jurisdiction for all *cases under* title 11. Subsection (b) of section 1334 provides that the district court has original, but not exclusive, jurisdiction of all *civil proceedings arising under* title 11, or *arising in* or *related to cases* under title 11. Subsection (c)(1) of section 1334 provides the district court with authority to voluntarily abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title

---

1. Section 157(b)(3) provides in relevant part: The bankruptcy judge shall determine on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11....

28 U.S.C. § 157(b)(3).

11." 28 U.S.C. § 1334(c)(1). Subsection (c)(2) of section 1334 requires the district court to abstain in a related matter that but for bankruptcy would have to be brought in a state court, "if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

The foregoing exposition of section 1334 reveals the distinctions made between proceedings arising under title 11, proceedings arising in a case under title 11, and proceedings related to a case under title 11. These distinctions are significant because section 1334(c)(2) only applies to related proceedings based upon state law claims.

Title 28 makes further distinctions with respect to the use of the terms core proceeding and non-core proceeding in section 157. Pursuant to section 157(a), the district court is empowered to refer any and all proceedings arising under title 11 or arising in or related to cases arising under title 11, except for personal injury tort or wrongful death claims, to the bankruptcy court of that district. Section 157(b) provides that bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments...." 28 U.S.C. § 157(b)(1). The language of section 157(b)(1) implies that core proceedings are those that arise under title 11 or arise in a case under title 11. Section 157(c)(1) implies that non-core proceedings are related matters. Section 157(b)(2) provides examples of core matters. However, there is no definition in title 28 or the Bankruptcy Code as to what constitutes a related matter, although guidance may be had from the definition contained in the Emergency Rule promulgated in response to the United States Supreme

Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Emergency Rule [2] defined related proceedings as:

those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings in respect to lifting of the automatic stay; proceedings to set aside preferences and fraudulent conveyances; proceedings to determine the dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

Emergency Rule (d)(3)(A).

With respect to none-core proceedings:
... Unless the parties assent, only the district court may issue a final order or judgment if it does not abstain, and the role of the bankruptcy judge is much akin to a master who may hear the matter and make proposed findings and con-

---

2. The Judicial Conference of the United States submitted the rule to each federal circuit for adoption by the district courts on September 27, 1982.

Its purpose was to avoid the collapse of the bankruptcy system, and it was adopted as a temporary measure to provide for the orderly administration of bankruptcy cases and pro-

ceedings after the judgment in *Marathon* had become effective.

1 L. King, *Collier on Bankruptcy* ¶ 3.01 [vi] (1986). At the time the Bankruptcy Amendments and Federal Judgeship Act of 1984 was enacted, bankruptcy courts were functioning under the Emergency Rule.

clusions to the distict court which reviews de novo matters to which any party has timely and specifically objected.' Lavien, "Bankruptcy Highlights" in *Bankruptcy Code, Rules and Forms* XXIII (West 1987).

■ The Debtors argue that this Court should hear the merits of this case because it is a core proceeding under 28 U.S.C. § 157(b)(2). Section 157(b)(2) contains a list of 15 examples of core matters, but that list is not exhaustive. The Debtors contend that its complaint may be construed as a core proceeding within the meaning of §§ 157(b)(2)(A) ("matters concerning the administration of the estate"), (E) ("orders to turn over property to the estate") or (O) ("other proceedings affecting the liquidation of assets of the estate ...") An insurance policy and its derivative proceeds are unquestionably property of the estate pursuant to 11 U.S.C. § 541(a), *see In re Pied Piper Casuals, Inc.,* 50 B.R. 549, 550–51 (Bankr.S.D.N.Y.1985), and the cases cited therein. Accordingly, the Debtors reason that the administration of that property necessarily is a core matter, *In re Heaven Sent, Ltd.* 50 B.R. 636 (Bankr.E.D.Pa 1985). The Debtors emphasize that the insurance policy was obtained post-petition. Indeed, the Court notes, parenthetically, that the Operational Instructions and Reporting Requirements of the United States Trustee for the District of Maine, Massachusetts, New Hampshire, and Rhode Island, require debtors-in-possession to furnish proof that their property is insured.

The Fair Plan and Richardson argue that this adversary proceeding cannot be characterized as a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), citing *Arnold Printworks, Inc. v. Apkin,* 61 B.R. 520 (D.Mass.1986) and *Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.Mass.1985). Indeed, the defendants aver that this proceeding involves precisely the type of state law claim which the United States Supreme Court held could not be constitutionally tried by an Article I bankruptcy court judge in *Northern Pipeline Construction Co. v. Marathon Pipe Line*

*Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Accordingly, the defendants assert that this Court must abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(2). The Fair Plan, in its memorandum, contends that Congress intended section 1334(c)(2) to be a "constitutional answer to *Marathon*," *see* 1984 U.S.Cong. & Admn.News 576, 588, and that permitting bankruptcy judges to adjudicate state law claims would deprive litigants of the protections of state law "merely because they happened to do business with ... a party who later went bankrupt." *Id.* at 594. With respect to the abstention issue, however, the defendants also suggest that if the Court decides that it does have jurisdiction to hear the matter, and that it will not abstain pursuant to 28 U.S.C. § 1334(c)(2), it should voluntarily abstain pursuant to 28 U.S.C. § 1334(c)(1).

In *Arnold Printworks, Inc. v. Apkin,* 61 B.R. 520, 523 (Bankr.D.Mass.1986), the district court observed that "courts that have considered whether a debtor-in-possession's contract action is a core or non-core matter have yielded a decisive split," with some courts adopting "a very expansive definition of 'core proceeding' " and others adopting "a narrow construction of what can fit within the ambit of core proceedings." *Compare In re Wood,* 52 B.R. 513 (Bankr. N.D.Ala.1985); *In re Alloy Metal Wire Works, Inc.* 52 B.R. 39 (Bankr.E.D.Pa. 1985); *In re L.A. Clarke and Son, Inc.* 51 B.R. 31 (Bankr.D.D.C.1985); *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bankr.S. D.N.Y.1985); *In re All American of Ashburn, Inc.* 49 B.R. 926 (Bankr.N.D.Ga. 1985); *In re DeLorean Motor Co.,* 49 B.R. 900 (Bankr.E.D.Mich.1985); *In re Harry C. Partridge, Jr. & Sons, Inc.* 48 B.R. 1006 (Bankr.S.D.N.Y.1985); *In re Baldwin-United Corp.,* 48 B.R. 49 (Bankr.S.D.Ohio 1985); *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985); *with In re Shaford Companies, Inc.* 52 B.R. 832 (Bankr. D.N.H.1985); *State Bank of Lombard v. Chart House, Inc.,* 46 B.R. 468 (Bankr.N. D.Ill.1985); *In re Smith-Douglass, Inc.,* 43 B.R. 616 (Bankr.E.D.N.C.1984); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.

E.D.Mich.1984); *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bankr.D.N.D.1984). Consistent with its earlier opinion in *Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.Mass.1985), the district court in *Apkin* narrowly construed section 157. It concluded that a debtor-in-possesion's suit to recover a post-petition account receivable was a non-core matter, relying on the Supreme Courts decision in *Marathon.* The court found the debtor's attempts to distinguish *Marathon* more persuasive than some of the decisions upon which the Debtor relied. Nevertheless, the *Apkin* court rejected the debtor's arguments that an account receivable action is distinguishable from a state contract or warranty claim. Additionally, the court was unpersuaded by the fact that the defendants, not the plaintiff, interjected "complexities" of state law into the proceeding and demanded a jury trial. The court stated:

> The essential thing about the Supreme Court's holding in *Marathon,* is that it is not phrased in terms of fundamental unfairness to the rights of one party or of a party being forced to litigate in a court against his wishes. Rather, it goes to the heart of article III of the Constitution and the very basic principle that only judges invested with the mantle of article III status have the power to affect the substantial state-created rights of litigants, with or without their consent.

*Arnold Printworks, Inc. v. Apkin,* 61 B.R. 520, 525 (D.Mass.1986) (footnote omitted).

Unlike the *Apkin* case, the instant case does not involve the collection of a post-petition account receivable. Moreover, the Court finds that the instant proceeding is clearly distinguishable from *Marathon.* As Judge Freedman in *Apkin* noted:

> The facts in Marathon can be simply stated. Northern Pipeline filed a petition for reorganization in the bankruptcy court in January 1980. In March of that year, Northern initiated a suit in the bankruptcy court against Marathon Pipe Line for breaches of contract and warranty, misrepresentation, coercion and duress. Marathon moved in the bank-

ruptcy court to dismiss on the ground that the delegation of authority to the bankruptcy court to adjudicate the matter was contrary to article III of the Constitution.

61 B.R. at 521. What Judge Freedman did not emphasize, and what this Court considers to be dispositive, is the fact that Northern Pipeline initiated a suit against Marathon Pipeline for *pre-petition* breaches of contract and warranty, misrepresentation, coercion and distress. Thus, the instant case is distinguishable from *Marathon* because the Debtors' are suing the Fair Plan and Richardson for *post-petition* breach of contract and deceit, matters clearly affecting this Court's administration of the Debtors' estates, *cf.* 28 U.S.C. § 157(b)(2)(A).

Additionally, although the Debtors caption the counts in their complaint as breach of contract and deceit, the Court notes that the complaint is easily construed as one for turnover pursuant to § 157(b)(2)(E). The case of *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bankr.S.D.N.Y.1985), is informative in this regard. In that case, a trustee brought an action upon an insurance policy issued to the debtor pre-petition, seeking reimbursement for losses due to theft which also occurred pre-petition. In responding to the trustee's complaint, the insurer asserted defenses based on policy provisions requiring action on the policy within 12 months of loss and the filing of a written proof of loss within 60 days of discovery of the loss, as well as other defenses based on exclusions from coverage. As in the instant case, the insurer argued that the proceeding was non-core. In holding that the action was a core proceeding, Judge Buschman noted that the proceeding "either is, or bears a strong similarity to, a turnover proceeding which Congress has expressly included in its open-ended definition of core proceedings." *Id.* at 551. Citing *In re Sunrise Equipment and Development Corp.,* 24 B.R. 26, 27 (Bankr.D. Ariz.1982), the court observed that an examination of the legislative history of section 542(b), which section defines a turnover proceeding as an action based on "a

debt that is property of the estate and that is matured, and payable on demand, or payable on order," 11 U.S.C. § 542(b), compels a broad view of section 542's turnover power. Since insurance policies and their derivative proceeds have been held to constitute property of the estate, the court determined that "such proceeds are subject to the turnover provisions of § 542 once the insurance company has recognized its duty to pay." 50 B.R. at 551. The court also determined that "[w]ith respect to an insurer's obligation to pay insurance proceeds, the debt is matured upon the occurrence of the loss." *Id.* Citing inter alia 5A Appelman, *Insurance Law and Practice* § 3481 (1981), the court recognized that the insurers obligation to pay, although conditioned upon a timely written proof of loss, "is akin to the demand and presentment conditions applicable to causes of action based on negotiable instruments ... [that fall] ... within the definition of turnover proceedings." 50 B.R. at 551. Furthermore, the court compared the insurance company's defenses to forgery and other defenses to a check, concluding that the defenses do not affect the demand character of the debt. *Id.*

The Court recognizes that insurance contracts are not negotiable instruments and that there is a danger of contradicting *Marathon* by too easily characterizing attempted recoveries of causes of action owned by debtors at the time of filing as turnover proceedings. *Cf.* 1 L. King, *Collier on Bankruptcy* ¶ 3.01[2][b][iii] (15th ed. 1986). Nevertheless, the Court finds that Judge Buschman's analysis is helpful in the context of this proceeding. As a consequence, the Court affirms its bench ruling that this adversary proceeding is a core proceeding from which abstention is unnecessary.

■ Because the Court has determined that this adversary proceeding involves a core proceeding, it need not address the abstention motions. However, assuming *arguendo* that this proceeding is a related proceeding, the Court will consider the question of abstention. Section 1334(c)(2)

mandates abstention with respect to an action which could not have been commenced in a court of the United States, absent jurisdiction under this section. Since there is no diversity of citizenship involved in this proceeding, the mandatory abstention provision is applicable "if an action *is* commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis supplied). The Court chooses not to abstain in this proceeding (assuming it is a related proceeding) for two reasons: 1) there is no action pending in a state court; and 2) the Court has serious doubts as to whether the matter can be timely adjudicated in a state court so as not to delay confirmation and the remaining administrative steps necessary to close these cases.