In re ALLOY METAL WIRE WORKS, INC., Debtor.

ALLOY METAL WIRE WORKS, INC., Plaintiff,

v.

ASSOCIATED SCREW AND MANUFACTURING CO., Defendant.

Bankruptcy No. 84–01922G.
Adv. No. 85–0112G.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 13, 1985.

Kenneth F. Carobus, Philadelphia, Pa., for debtor/plaintiff, Alloy Metal Wire Works, Inc.

Sheridan P. Hunt, Jr., Medford, N.J., for defendant, Associated Screw and Mfg. Co.

Marvin Krasny, Adelman, Lavine, Krasny, Gold and Levin, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

On a debtor's complaint to collect an account receivable from a vendee, the predominant question is whether the vendee seasonably notified the debtor of an alleged breach in a sales contract within the meaning of 13 Pa.Cons.Stat.Ann. § 2607(c) (Purdon 1984) of the Uniform Commercial Code ("the UCC") of Pennsylvania. For the reasons set forth below, we conclude that there was no timely notification by the vendee of the breach.

We find the facts of this case as follows:[1] The vendee, Associated Screw and Manufacturing Co. ("Associated"), ordered 3000 pounds of wire from the debtor for use in the manufacture of screws. After accepting the wire Associated began utilizing it to form screw blanks but it noticed that the blanks thusly produced were flawed with cracks rendering them unusable. In an effort to produce serviceable blanks, Associated's employees expended sixty man-hours and used a significant portion of the wire. Although the evidence clearly indicates that the screw blanks

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

were useless, Associated failed to establish that this was caused by the debtor's failure to comply with the contract specifications.

Approximately one month after the wire was received by Associated, the debtor was forced to vacate its place of business due to its default under a lease although shortly thereafter the debtor resumed occupancy. At about this time an involuntary petition for relief under chapter 7 was filed against the debtor. The debtor acquiesced in the entry of the order for relief and several days later the case was converted to a chapter 11 proceeding at the debtor's behest.

Although Associated testified that it telephoned the debtor on three separate occasions to inform it of the allegedly nonconforming nature of the wire, this testimony lacks credibility. When two of the calls were allegedly placed, the debtor's usual staff were manning the phones. When the third call was reportedly made, security guards were on duty receiving all calls and relaying messages to the debtor. None of the calls reached the debtor with information that the merchandise was allegedly nonconforming. Associated made no effort to send the debtor notice of the nonconformity by writing or by any other means and notice of this nonconformity did not reach the debtor until the debtor filed the instant complaint more than a year after the delivery of the wire. Without previous notice to the debtor, Associated sold the unusable wire to a scrap dealer.

■■ As a preliminary matter we first discuss our jurisdiction to hear the debtor's complaint on an account receivable. In a recent case we held that a debtor's complaint on an account receivable was a core matter under 28 U.S.C. § 157(b), thus allowing us to enter final orders on such disputes. *Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In Re Franklin Computer Corp.)*, 50 B.R. 620 (Bankr. E.D.Pa.1985). We alternatively have jurisdiction under 28 U.S.C. § 157(c)(2) which allows us to hear matters and enter final orders with the consent of the parties. The parties have implicitly consented to our jurisdiction by failing to raise a timely objection.

The next issue arises under Associated's contention that it did not accept the goods in question since it never had a reasonable opportunity to inspect them. The parties agree that the governing rule of law is supplied by § 2606 of Pennsylvania's UCC:

§ 2606. What constitutes acceptance of goods

(a) General Rule.—Acceptance of goods occurs when the buyer:

(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;

(2) fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(3) does any act inconsistent with the ownership of the seller, but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(b) Part of commercial unit.—Acceptance of a part of any commercial unit is acceptance of that entire unit.

13 Pa.Con.Stat.Ann. § 2606 (Purdon 1984). Associated's argument that under § 2606(a)(2) it lacked a reasonable opportunity to inspect the goods is misplaced. As we stated previously, it spent sixty man-hours trying to work the wire into screw blanks. This was unquestionably a reasonable opportunity for inspection. Thus, Associated is deemed to have accepted the goods under § 2606(a)(2). Alternatively, it accepted the goods under § 2606(a)(3) since it utilized the wire in a way which was "inconsistent with the ownership of the [debtor]...."

Even though a vendee has accepted goods under a contract the UCC provides that he may reject those goods if they fall short of the specifications expressed in the contract. The parties once again agree on the operative section of the UCC:

§ 2607. Effect of acceptance; notice of breach; burden of establishing breach after acceptance; notice of claim or litigation to person answerable over

\* \* \* \* \* \*

(c) Notice of Breach.—Where a tender has been accepted:

(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and

(2) if the claim is one for infringement or the like (section 2312(c)) and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

\* \* \* \* \* \*

13 Pa.Cons.Stat.Ann. § 2607 (Purdon 1984). Associated asserts that it complied with the notice provisions of § 2607(c) by allegedly placing three telephone calls to the debtor's place of business. We found above that the evidence in support of this averment was not credible. Alternatively, even if Associated had tried to call the debtor but failed to reach it, this attempt at notice would have been insufficient. At the very least Associated should have sent a letter to the debtor when telephoning failed. Fearing that we might reach such a conclusion, Associated argued that it thought a letter would have been of no avail. There is no evidence to support such a belief.

Having accepted the goods and failing to notify the debtor within a reasonable time that it rejected the goods as nonconforming, Associated is bound by the terms of the contract and is liable for the contract price of $5,432.13.

The debtor also asserts that it is due interest on the $5,432.13 debt from May 17, 1984, to the present at the contract rate of 18% for a total of $6,572.88. Associated has advanced no tenable argument in opposition to this relief and we will accordingly enter judgment for the debtor in the amount of $6,572.88. However, post-judgment interest will accrue at the legal rate of interest rate rather than the 18% contract rate.