**In re WINDSOR COMMUNICATIONS GROUP, INC., t/a Norcross-Rust Craft Greeting Card Publishers, Debtor.**

**Bankruptcy No. 82–03714K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 24, 1986.

As Amended Dec. 4, 1986.

Edward C. Toole, Jr., Mary F. Walrath, Douglas J. Smillie, Andrew A. Giaccia, Philadelphia, Pa., for debtor/Windsor Communications.

William Schaps, Philadelphia, Pa., Trustee—Pinto Trucking.

Stephen Raslavich, Philadelphia, Pa., for Pinto Trucking.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

On September 2, 1986, the second day on the bench, we were presented with seven (7) adversarial proceedings in which the Debtor in the above-entitled case was seeking to collect various accounts receivable. We were later advised that these cases were the tail-end of a series of more than seventeen hundred (1,700) such adversarial proceedings instituted by this Debtor alone since the bankruptcy filing in this case as an involuntary Chapter 7 case on August 5, 1982, and its conversion to Chapter 11 on August 25, 1982.

The following day, September 3, 1986, among the matters before us were twenty (20) accounts receivable adversarial proceedings filed by the Counsel for the Trustee in the case of *Pinto Trucking Service, Inc.*, Bankruptcy No. 85–04573K.

The number of accounts receivable proceedings before us has continued to flow since these beginnings. In the majority of these cases, the Defendants failed to respond, and the Debtor-Plaintiffs have sought default judgments. Nevertheless, we were unable to decide exactly how to handle these matters, because we were aware that the pertinent provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (BAFJA), codified at 28 U.S.C. § 157, were variously interpreted by not only this Court, but by courts across the country, in classifying these apparently garden-variety accounts receivable proceedings as either "core" or "noncore" proceedings. The Code dictates that a determination as to whether any proceedings before it are core or noncore is to be made by a bankruptcy court "on the judge's own motion or on timely motion of a party," 28 U.S.C. § 157(b)(3), presumably at an early stage in the proceedings. Thus, we are constrained to reach a conclusion on the issue forthwith.

The significance of this determination does not affect the issue of whether we, as a bankruptcy court, can hear the case. Rather, at issue is whether we can "hear and determine" the matter, per 11 U.S.C. § 157(b)(1), or are required to hear it and then "submit proposed findings of fact and conclusions of law to the district court," which has exclusive power to enter a final order in a noncore matter. 28 U.S.C. § 157(c)(1). The core-noncore determination was, then, critical in arriving at the procedure to be utilized in deciding these matters.

We must confess, moreover, that our view as to the proper procedure was colored by our observation that a large percentage of these cases result in defaults, and that not only the labor of producing findings of fact and conclusions of law, but the seemingly empty formality of submitting an uncontested matter to the district court for a final order struck us as the height of wastefulness of the time of both our Court and the District Court. Thus, our initial reaction was to reach a determination that these matters were core proceedings if such a result could possibly be squared with BAFJA.

In order to assist our determination, we asked Counsel for the Debtor in this case and Counsel for the Trustee in *Pinto Trucking* to submit Briefs on this issue. Somewhat to our surprise and chagrin, Counsel for the Trustee for *Pinto Trucking* ultimately declined our invitation, stating that he believed that such proceedings were noncore. *Windsor's* Counsel submitted a Brief concluding that, while Counsel believed that actions brought exclusively to recover tangible property and proceedings in which actions to recover tangible property were mixed with proceedings to collect accounts receivable were core proceedings, garden-variety accounts receivable proceedings were noncore.

These views of creditors' attorneys have caused us to rethink our initial reaction. Nevertheless, for perhaps more sophisticated reasons than our initial, purely pragmatic considerations, or, perhaps more accurately stated, because none of the more sophisticated arguments outweigh the accurate common sense of our initial

reactions, we continue to believe that such garden-variety accounts receivable actions can and should be determined to be core proceedings. We shall therefore so treat all such matters before us which have not yet proceeded to final judgment as core proceedings, and shall proceed to so "determine" such cases, per 28 U.S.C. § 157(b)(3), in the future.

The underlying reason for the divergence of results in this area is the loose draftsmanship of 28 U.S.C. § 157(b)(2), which, in defining what is and is not a core proceeding, states as follows:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of each collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

The difficulty with this list is that it is illustrative rather than exclusive, and several of the categories, particularly §§ 157(b)(2)(A) and (O), are extremely broadly stated.

Varying results on the determination of account receivable actions as core or noncore were reached by different judges of this Court in the space of a few brief months in 1985. In several of the *Windsor* proceedings, *e.g., Windsor Communications Group, Inc. v. Wal-Mart Stores,* Adversary No. 82–2465, Slip Op. at 2 (Bankr. E.D.Pa. Opinion and Report filed April 18, 1985); *Windsor Communications Group, Inc. v. Five Towns Stationery, Inc.,* 53 B.R. 293, 296 (Bankr.E.D.Pa.1985); and *Windsor Communications Group, Inc. v. Grant,* Adversary No. 84–0782, Slip Op. at 14 (Bankr.E.D.Pa. Report to District Judge Pollak, filed March 1, 1985), the Honorable William A. King, Jr. consistently held that such proceedings were noncore.

Apparently supporting this conclusion is an Opinion by Chief Judge John P. Fullam of our District Court in an appeal in a case of the Honorable Thomas M. Twardowski of this Court in *In re George Woloch, Inc.,* 49 B.R. 68 (E.D.Pa.1985). That case arrived in the district court in an unusual case procedural posture, *i.e.,* in an appeal from a denial of a Motion to Dismiss, the purpose and intent of which Chief Judge Fullam indicated was unascertainable. *Id.* at 70 n. 1. Nevertheless, presuming that the appellants desired a jury trial, which they demanded and which the Chief Judge believed could not be provided by the bankruptcy court, Chief Judge Fullam withdrew

the reference of the matter to the bankruptcy court and stated: "The debtor seeks to characterize this dispute as a 'core' proceeding, but I conclude that it is plainly a 'related' proceeding." 49 B.R. at 70.

However, several weeks later, Emil F. Goldhaber, Chief Judge of this Court, admittedly unaware of the *Woloch* decision, rendered a directly contrary Opinion in *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr.E.D.Pa.1985). In contrast to Judge Fullam's brief treatment of the issue, Judge Goldhaber's Opinion is among the most lengthy and reflective on the subject, and Judge Goldhaber himself adhered to this decision in subsequent decisions. *E.g., In re Alloy Metal Wire Works*, 52 B.R. 39, 40 (Bankr.E.D.Pa.1985). In his ruling, Judge Goldhaber opined that an accounts receivable proceeding could be classified as core under either 28 U.S.C. §§ 157(b)(2)(A), (E), or (O).

In our determination, we shall attempt to answer four (4) different questions which have arisen in our study of this issue, as follows:

1. May an accounts receivable proceeding be reasonably said to fall within any of the categories of 28 U.S.C. § 157(b)(2)?

2. Does the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), require, from a constitutional vantage point, that such proceedings be determined to be noncore?

3. Irrespective of this Court's independent analysis of this issue, is it bound to follow the *Woloch* decision, since it was rendered by the district court?

4. What are the practical consequences of the decision?

■ There appears to be no doubt that, at least in one sense, an accounts receivable proceeding concerns the administration of the collecting debtor's estate, and effects the liquidation of the assets of the debtor's estate, per 28 U.S.C. § 157(b)(2)(A) or § 157(b)(2)(O). However, the same could be said of almost any proceeding which has any impact on the debtor. If these provisions are read broadly, it is difficult to imagine what sort of proceedings would *not* be core. Perhaps it *was* the intention of Congress to have bankruptcy courts classify nearly every proceeding which touches the debtor in any respect whatsoever as a core proceeding. However, even those courts which have held accounts receivable proceedings to be core have drawn some distinctions between such proceedings and other sorts of proceedings which in some sense concern administration and effect the liquidation of the debtor's estate, but which these same courts conclude that Congress, with the shadow of *Marathon* upon it, must have meant to exclude from determination by Article I bankruptcy judges.

In a broad sense, an accounts receivable proceeding could also be classified as a turnover action, per 28 U.S.C. § 157(b)(2)(E). *See In re National Equipment and Mold Co.*, 60 B.R. 133, 135–36 (Bankr.N.D.Ohio 1986). However, as particularly the court in the *Matter of Century Brass Products, Inc.*, 58 B.R. 838, 840–43 (Bankr.D.Conn.1986), points out, turnover actions are historically proceedings in the nature of replevin actions rather than actions for money damages. Also, it must again be observed that a broad reading of § 157(b)(2)(E) could render any affirmative action by a debtor a turnover proceeding and, hence, a core proceeding.

In recognition of implicit limitations on a too-broad reading of 28 U.S.C. § 157(b)(2)(A), (E), or (O), most of the cases which have held accounts receivable actions to be core proceedings have done so in opinions which draw at least one of two general distinctions between such proceedings and other sorts of proceedings which these courts would agree should be labelled as noncore. The first is that, in such an action, a substantial nexus exists between the proceeding and the bankruptcy estate; the second is that accounts receivable cases generally raise simple issues of state law, which can be relegated to Article I courts.

The first distinction is emphasized in two (2) successive decisions by the bankruptcy court in *Matter of Baldwin-United Corp.*, 52 B.R. 541 and 48 B.R. 49 (Bankr.S.D.Ohio 1985). In the initial decision, the court holds that an accounts receivable proceeding, even when complicated with counterclaims, is a core proceeding. *Accord: National Equip., supra.* However, in the later *Baldwin* decision, an action by the debtor against four (4) insurers which allegedly breached contracts with the debtor, the courts holds the matters before it to be noncore. Other courts making a similar "nexus" analysis include *Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773, 780 (M.D.Pa.1985); *In re Pied Piper Casuals, Inc.*, 50 B.R. 549, 551 (Bankr.S.D. N.Y.1985); and *In re Lion Capital Group*, 46 B.R. 850, 859–61 (Bankr.S.D.N.Y.1985).

The second distinction is emphasized by the decisions in *In re Bucyrus Grain Co.*, 56 B.R. 204, 206 (Bankr.D.Kan.1986); and *Franklin Computer, supra*. In *Bucyrus*, the court is swayed by "what will best assure an economical and expeditious administration of the debtor's estate" in what it terms as "a critical part of the administration of the bankruptcy estate traditionally pursued by the Bankruptcy Court." 56 B.R. at 206. In *Franklin Computer*, Chief Judge Goldhaber points to the fact that, in such matters, "the issues generally are straight forward and merely require the utilization of well accepted principles of law," causing him to conclude that "[t]he American icons of Mom, apple pie and the flag are not in jeopardy because bankruptcy judges may enter final orders on disputes of accounts receivable." 50 B.R. 626.

In sum, we do not consider it unreasonable to conclude that accounts receivable proceedings fall within 28 U.S.C. §§ 157(b)(2)(A), (E), or (O), even if these sections are not given their broadest possible reading. In fact, most of the cases holding such matters to be noncore do not do so on the ground that such matters could not conceivably fall within these provisions, but because they believe that to so interpret 28 U.S.C. § 157 would be directly contrary to the result, the holding, or both,

of *Marathon*. Cases in this category include *Century Brass, supra; In re Maislin Industries, U.S., Inc.*, 50 B.R. 943 (Bankr.E.D.Mich.1985); and *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr.E.D. Mich.1984). One court, *In re Satelco, Inc.*, 58 B.R. 781, 787–90 (Bankr.N.D.Tex.1986), has suggested that, if 28 U.S.C. § 157(2)(b)(O) is interpreted so broadly as to include accounts receivable proceedings within its scope, it is unconstitutional and must be so declared. This observation leads to the consideration of the second and most difficult issue raised by this case, the impact of *Marathon*.

■ Certain portions of the opinions in *Marathon*, particularly the concurring opinion authored by now Chief Justice Rehnquest and joined by only Justice O'Connor, gives strong support to these decisions. While not willing to address the broad issue of the constitutionality of former 28 U.S.C. § 1471, as was the plurality, the Chief Justice concurs due to his concern that Article I judges will otherwise be deciding "traditional actions at common law" which "arise entirely under state law" and of which the method of adjudication has always been "the traditional common-law mode of judge and jury." 458 U.S. at 90, 102 S.Ct. at 2881.

We note, in this vein, that the National Bankruptcy Conference has taken the position that "Congress intended such actions to be noncore" because "this is so close to the *Marathon*—type cause of action." R. Greenfield, *The National Conference's Position on the Court System Under the Bankruptcy Amendment and Federal Judgeship Act of 1984, and Suggestions for Rule Promulgation*, 23 HARVARD J. ON LEGISLATION 357, 365 (1986).

However, we believe that these views represent a "worst possible case scenario" interpretation of *Marathon*, viewing *Marathon* as a constitutional threat to the exercise of jurisdiction by the reconstituted bankruptcy courts in almost every matter which comes before them. While it is of course not inconceivable that the Supreme

Court will address the exercise of jurisdiction by the bankruptcy courts under BAFJA and determine that these amendments have not cured the elements which the Court found offensive to the Constitution in the previous version of the Code, this result seems unlikely for two (2) reasons. First, no constitutional challenge to the courts' actions has been mounted in any of the many cases where accounts receivable actions have been found to be core proceedings, including the decisions by Judge Goldhaber in this court. It seems to us quite an over-reaction to credit a constitutional attack before it is even attempted.

Secondly, the Supreme Court, in opinions drafted by Justice O'Connor, who joined the Chief Justice in the *Marathon* plurality, has indicated that the broadest reading of the language of the *Marathon* plurality has been ruled out. In the first of these *Thomas v. Union Carbide Agricultural Products, Inc.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 498 (1985), the Court upheld the power of non-Article III Arbitrators of the Environmental Protection Agency to determine disputes arising under the Federal Insecticide, Fungicide, and Rodenticide Act, reversing a district court decision holding that Act unconstitutional on the basis of *Marathon*.

It must be conceded that certain language of Justice O'Connor in *Thomas*, 473 U.S. at ——, 105 S.Ct. at 3335, 87 L.Ed.2d at 422, reiterates a broad reading of *Marathon* as prohibiting non-Article III courts from "issuing binding orders in a traditional contract action arising under state law." However, the subsequent opinion of Justice O'Connor in *Commodity Futures Trading Comm'n v. Schor*, —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), diminishes the likelihood that the fact that accounts receivable actions are traditional, state court contract actions renders a delegation to the bankruptcy courts to hear and determine them unconstitutional. In that case, the Court was faced with a challenge of the practice of the Plaintiff agency of hearing state-law counterclaims related to actions against brokers brought before it. In upholding the power of the Plaintiff to hear

such counterclaims in the face of a challenge based on *Marathon*, Justice O'Connor states that "there is no reason inherent in separation of powers principles to accord the state law character of a claim talismanic power in Article III inquiries." 106 S.Ct. at 3259. *See also id.* 106 S.Ct. at 3260 ("the magnitude of an intrusion on the Judicial Branch can only be termed *de minimus*") and 3261 ("The sole fact that [a claim] is resolved by a *federal* rather than a *state* tribunal could not be said to unduly impair state interests, . . .").

These observations lead us to agree with the observation that the Supreme Court had merely ruled on the constitutionality of 28 U.S.C. § 1471, and that the Court's statement in *Marathon* may not impact on the adjudication of accounts receivable cases under the Code as amended by BAFJA. *See Baldwin-United*, 52 B.R. at 544–45; *Franklin Computer*, 50 B.R. at 623–24; and *Lion Capital*, 46 B.R. at 858–59.

We would also observe that giving too broad an impact to the statements of Chief Justice Rehnquist in his concurring opinion in *Marathon* that Article I judges cannot adjudicate traditionally state law claims appears as illogical as giving too broad a reading to 28 U.S.C. §§ 157(b)(2)(A) and (O). Allowance or disallowance of claims against the estate similarly involve adjudication of solely state-law claims but, except for "personal injury tort or wrongful death claims," such matters are expressly designated as core proceedings. 28 U.S.C. § 157(b)(2)(B). *See Marathon*, 458 at 96–97, 102 S.Ct. at 2884 (White, J., dis.op.); and *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

Determinations of the validity of liens and replevin-like turnover actions, which we agree with *Windsor's* counsel are clearly core, will also turn on adjudications of state law issues, but such proceedings are expressly designated as core proceedings. 28 U.S.C. § 157(b)(2)(K), (E). In fact, we note that, while the State courts of Pennsylvania entrust initial decisions in matters in which money damages of $20,000.00 or

less only are sought, as in most accounts receivable actions, to non-judicial arbitrators, the entrustment of certain types of actions regularly decided by bankruptcy judges, such as matters involving title and possession of real estate and injunctive and declaratory relief, to arbitrators is not permitted. *See* 42 Pa.C.S.A. §§ 7361(b)(1), (b)(2), and Pa.R.Civ.P. 1301. This observation suggests that there is absolutely nothing "talismanic" about the nature of accounts receivable actions which should render them, of all proceedings, off-limits to a bankruptcy judge.

We therefore are not willing to conclude that *Marathon* has any direct bearing upon the determination of whether accounts receivable actions are core proceedings under BAFJA. We are aware of no legislative history or indication in the text of BAFJA which supports the statements of the National Bankruptcy Conference that Congress intended that accounts receivable actions be noncore. Rather, Congress expressed only a desire to preclude bankruptcy-court adjudication of personal injury and wrongful death actions. *See* 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5). We do not believe, therefore, that *Marathon,* any constitutional principle enunciated therein, or any response thereto by Congress, requires that we treat accounts receivable proceedings as noncore matters.

The decision in *In re Arnold Print Works, Inc.,* 54 B.R. 562 (Bankr.D.Mass. 1985), *aff'd,* 61 B.R. 520 (D.Mass.1986), puts before us the third issue, *i.e.,* whether we are bound by Chief Judge Fullam's decision in *Woloch,* despite our own proclivity towards a contrary decision. In *Arnold,* after reciting at length the reasoning in, particularly, *Franklin Computer, Baldwin United,* and *Lion Capital,* and concluding that it is "strongly inclined to agree with the aforementioned authorities ... [which] result in a classification of [such] a matter as core," 54 B.R. at 567, the bankruptcy court concludes that "in the interests of avoiding inconsistencies," *id.,* at 568, it is obliged to adhere to the "unequivocal" holding by the district court in the same district in *Mohawk Industries,*

*Inc. v. Robinson Industries, Inc.,* 46 B.R. 466 (D.Mass.1985), that such proceedings are noncore matters.

In researching this issue, we have uncovered but three (3) cases which state that bankruptcy courts are absolutely bound by decisions of the district court where they are sitting. *In re Maisson,* 57 B.R. 227, 229 (Bankr.E.D.Mich.1985); *In re Investment Sales Diversified, Inc.,* 49 B.R. 837, 846 (Bankr.D.Minn.1985); and *In re V–M Corp.,* 23 B.R. 952, 954–55 (Bankr.W.D. Mich.1982). *Cf. In re Hubbard,* 23 B.R. 671, 673–74 (Bankr.S.D.Ohio 1982) (bankruptcy court bound by only district courts in the Sub-division of the district, which review its decisions.)

However, other courts have stated that bankruptcy courts must follow the decisions of district courts where they are sitting only insofar as required by the doctrine of *stare decisis. See In re Bill Ridgway, Inc.,* 4 B.R. 351, 353 (Bankr.D.N.J. 1980). Further, as Judge Norton stated in *In re Henry,* 38 B.R. 24, 17 (Bankr.N.D.Ga. 1983), "[t]he doctrine of *stare decisis* ... is not an immutable principle." Rather, although admittedly with great hesitation, bankruptcy courts have refused to follow decisions by other courts in its district on the basis of this principle. *See In re Thompson,* 59 B.R. 690, 694–95 (Bankr.W. D.Tex.1986) (bankruptcy court refuses to follow decision of Court of Appeals in its Circuit); and *In re Riposo,* 59 B.R. 563, 565–66 (Bankr.N.D.N.Y.1986) (bankruptcy judge refuses to follow decision of his predecessor).

Muddying the issue of whether we are bound to follow *Woloch* is the presence of *Franklin Computer* and *Alloy Metal Wire,* both post-*Woloch* decisions by the Chief Bankrtupcy Judge in our district which were inconsistent with *Woloch.* In *In re Brent-Piskell,* 12 B.R. 352, 357 (Bankr.S.D.Cal.1981), the court, while not following the decision of a brother judge in that case, states: "As a matter of comity and professional courtesy, brother judges in the same district are accustomed to fol-

lowing each other's decisions." *See also, e.g., Buna v. Pacific Far East Line, Inc.,* 441 F.Supp. 1360, 1365 (N.D.Cal.1977); and *Eaton Lane & Cattle Co. v. Rocky Mountain Investments,* 28 B.R. 890, 892 (Bankr. D.Colo.1983). Also notable is the presence of a the district court decision which appears contrary to that of Chief Judge Fullam in a neighboring district by Judge Rambo in *Harley Hills, supra.*

■ The foregoing cases teach that we must give great deference to, but we need not blindly follow, decisions of our local district court. The statement in *Woloch* regarding the core-noncore issue is dictum and it is not clear that the parties to that action cited Chief Judge Fullam to any of the numerous authorities cited herein which directly addressed the core-noncore issue.

Clearly, we do not have a contrary prior decision in *Woloch* as "unequivocal" as the *Mohawk* decision which the court in *Arnold* ultimately felt bound to follow. Ironically, it is the *Franklin Computer* decision which has been widely cited by many of the foregoing cases as the law of this district. Unlike the situation facing the court in *Arnold,* the history of decisions in this district prevents us from achieving total consistency on this issue no matter what decision we reach.

Therefore, we do not believe that the answers to any of the first three (3) legal questions which we indicated at the outset that we must answer mandate a decision one way or the other on this issue. We therefore turn to consideration of the practical consequences of the decision. As we indicated in the third paragraph of our Opinion, we were initially and continue to be struck with the needless taxing of our time and that of the district court in submitting proposed findings of fact and conclusions of law to the district court for its review, per 28 U.S.C. § 157(c)(1), in the simplest of cases, which are frequently uncontested. We should note that our views are shared by at least one member of our bar, if not, apparently, by Counsel for the Debtor in this case and Counsel for the

Trustee in *Pinto Trucking.* S. Usdin, *Accounts Receivable as "Core" Matters,* BANKRUPTCY STRATEGIST, Volume III, NO. 6 (April, 1986).

There are, however, some countervailing practical considerations. One is the "safety" of treating the matter as noncore. The district court, and higher appellate courts, could not conceivably reverse treatment of such a matter as noncore, even if those courts believed that such matters should be classified as core. A district court would scarcely be likely to send proposed findings and conclusions back to the bankruptcy court with instructions to issue a final determination. Also, review of the district court's order would be only with the Court of Appeals, rather than adding a layer of an easy appeal to the district court from a final bankruptcy court determination. Thus, the finality of treatment of accounts receivable cases as noncore is the safer approach to treatment of such cases. Also, it is true that district court review reduces the rather slight but still present possibility of bankruptcy court error in such matters.

However, on the other hand, a decision that such matters are core will result in a possibility of appellate review directly on the subject, rather than having the district court address the matter in an appeal which does not actually present the pertinent issue squarely, as in *Woloch.* Making extra work because of paranoia of *Marathon* or because a greater possibility of appellate court reversal exists does not seem to us to be judicious.

A response to the "make-work" argument is that counsel for the plaintiff-debtors can be requested to prepare the proposed findings of fact and conclusions of law in defaults and mildly-contested cases, and therefore valuable court time will not be drained on such undertakings. However, this Court ascribes to the theory that someone always ultimately pays for every apparent gratuity of which one takes advantage. In this case, it is clear to see who will pay: the hours spent in preparing such findings and conclusions will appear as entrees in fee petitions of debtors' counsel, at

rates averaging $150.00 hourly. Ultimately, then, the debtors' estates, and the creditors, will pay for this "make-work."

In light of all of the foregoing, although we consider the question to be very close, we find no reasons to alter our original impression that we should determine such matters to be core proceedings. Moreover, we continue to believe that it is greatly in the best interest of all of the participants in the bankruptcy process that we conclude, as we do, that garden-variety accounts receivable actions are core proceedings. We do, however, recognize that different results may be in order if a dispute presented is of a more complex nature than a garden-variety accounts receivable action and requires us to construe difficult or unusual principles of state law. *See, e.g.,* the *Baldwin-United* decisions *supra.*

We therefore intend to enter final determinative Orders in the *Windsor* and *Pinto Trucking* cases upon the submission, by Counsel for the respective Plaintiff, of proposed Orders and Affidavits in compliance with Bankruptcy Rule 7055 and Federal Rule of Civil Procedure 55.[1]

1. The *Windsor* cases noted as on our list as before us on September 2, 1986, identified by name of Defendants and Adversarial Numbers only are:
   (1) Paula Wolfe and Mary Bos Cardin—Adversary No. 82–4356K
   (2) Martale, Inc.—Adversary No. 85–0427K
   (3) Harnicks Happy House—Adversary No. 82–3909K and (4) Adversary No. 82–4895K
   (5) Stephen Gross—Adversary No. 84–0181K
   (6) Twins Card Shop—Adversary No. 82–3980K
   (7) Cary's Camera Shop—Adversary No. 84–0968K
   We also note that we have papers relevant to cases involving:
   River Vale Pharmacy—Adversary No. 82–4300K
   Harry Cheebookjian—Adversary 84–0439K
   The Book Rack & Card Shop, Inc.—Adversary No. 84–0959K in our possession.
   The *Pinto Trucking* cases before us involved:
   (1) Airline Air Freight—Adversary No. 86–0724K
   (2) J.F. Moran—Adversary No. 86–0725K
   (3) Maven Video—Adversary No. 86–0726K
   (4) TMA Airlines—Adversary No. 86–0727K
   (5) W.R. Zanes & Co.—Adversary No. 86–0728K
   (6) All Freight Packers—Adversary No. 86–0732K

(7) Enterprises Shipping—Adversary No. 86–0733K
(8) American EMO Transportation, Inc.—Adversary No. 86–0734K
(9) VANCO/Cal Cartage—Adversary No. 86–0735K
(10) Rainbow Air Express—Adversary No. 86–0736K
(11) Vantage Graphics—Adversary No. 86–0737K
(12) Sunday Import—Adversary No. 86–0738K
(13) Gil-Med—Adversary No. 86–0739K
(14) Unex Shipping Co.—Adversary No. 86–0740K
(15) Sunkyong International, Inc.—Adversary No. 86–0741K
(16) Joseph Kanbaz Co.—Adversary No. 86–0742K
(17) J. Kanbaz Co.—Adversary No. 86–9743K
(18) Trojan Air Freight—Adversary No. 86–0744K
(19) Branko Forwarding—Adversary No. 86–0745K
(20) Vanco Distribution—Adversary No. 86–0746K