**In re THB CORPORATION, Debtor.**

**THB CORPORATION, Plaintiff,**

v.

**ESSEX BUILDERS COMPANY, INC., Defendant.**

**THB CORPORATION, Plaintiff,**

v.

**WELCH GROUP, INC., Defendant.**

**Bankruptcy Nos. 88–40034–JFQ. Adv. Nos. 88–4064, 88–4065.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 22, 1988.

Amendments and Federal Judgeship Act of 1984, P.L. 98–353 ("BAFJA"), the Congressional solution to the jurisdictional impasse created by *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Debtor, a plumbing and heating contractor, brings suit to collect receivables which, if due at all, were earned prior to the filing of this Chapter 11 case. Both defendants have filed answers denying the debt, and one has counterclaimed for damages. Neither has filed a proof of claim. Having claimed trial by jury, the defendants move for dismissal of the actions on the ground that the Court is not empowered to conduct a jury trial. In the interest of efficient administration of this Chapter 11 case, we deny the motions and retain the proceedings for pretrial rulings and eventual transfer to the district court for jury trial. We hold that these are non-core proceedings related to a case under title 11 and that the defendants are entitled to trial by jury. Eliding the question of whether the Court is empowered to conduct a jury trial of such a proceeding, we conclude that the Court may at most preside over a trial resulting in a proposed verdict which is subject to review and possible retrial in the district court. The potential of a second jury trial after review makes such a procedure unfair to the parties and wasteful of judicial resources to an even greater degree than the bench trial procedure required by 28 U.S.C. § 157(c)(1).

Steven Kressler, Kressler, Kressler & Pitnof, Worcester, Mass., for debtor.

Jay Theise, Widett, Slater & Goldman, Worcester, Mass., for Bank of New England/Worcester.

Leonard Krulewich, Silverman & Kudisch, Boston, Mass., for F.W. Webb.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

These two adversary proceedings present perhaps the most difficult questions which remain in the wake of the Bankruptcy

## I. NON–CORE, RELATED NATURE OF THESE ADVERSARY PROCEEDINGS

There is a conflict in the cases on whether actions to collect pre-filing accounts receivable are core proceedings or non-core proceedings related to a case under title 11, within the meaning of 28 U.S.C. § 157. In *In re Windsor Communications Group, Inc.*, 67 B.R. 692 (Bankr.E.D.Pa.1986) the court held that a "garden variety" accounts receivable collection case was a core proceeding under any one of three subsections of the statute: § 157(b)(2)(A) ("matters concerning the administration of the es-

tate"), § 157(2)(b)(E) ("orders to turn over property of the estate") or § 157(2)(b)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...."). *Id.* at 693, 695. The court believed that an action to collect a receivable earned in the ordinary course of business is different from other actions in two respects: the substantial nexus that exists between collection of receivables and the bankruptcy estate and the simplicity of state law issues generally raised. 67 B.R. at 695–96. The court was also influenced by practical considerations flowing from the volume of receivable collection proceedings in many bankruptcy cases and the desirability of expeditiously administering the estate. 67 B.R. at 693–99. It expressed particular concern for needlessly taxing the district court with proposed findings and rulings in the many proceedings which are uncontested. *Id.* at 699. *See also In re Franklin Computer Corp,* 50 B.R. 620 (Bankr.E.D.Pa.1985). Other courts have come to the same result by stressing that the phrase "turn over" used in § 157(b)(2)(E) also appears in the title to 11 U.S.C. § 542 whose subsection (b) requires payment to the estate of debts that are "matured, payable upon demand, or payable on order." *See Baldwin–United Corp. v. Thompson (In re Baldwin–United Corp.),* 48 B.R. 49 (Bankr.S.D. Ohio 1985). *Cf. B–U Acquisition Group, Inc. v. Utica Mutual Ins. Co. (In re Baldwin–United Corp.),* 52 B.R. 541 (Bankr.S.D. Ohio 1985) (insurance claim is not a core proceeding).

We are troubled by the practical difficulties which flow from labeling an ordinary accounts receivable case a non-core proceeding, difficulties which, as we shall see, are increased by a jury trial claim. Collection of accounts receivable is an integral part of many bankruptcy cases; the collection process may be analogized to a core proceeding authorizing the sale of estate property in that both have to do with liquidation of the estate for the payment of creditors. Decisions such as *Mohawk Industr., Inc. v. Robinson Industr., Inc.,* 46 B.R. 464 (D.Mass.1985) and indeed *Mara-*

*thon* itself are somewhat different in that they deal with claims for breach of contract or warranty rather than the collection of receivables earned in ordinary course. We are mindful that the concept of a core proceeding is to be "interpreted broadly, close to or congruent with constitutional limits." *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165 (1st Cir.1987) (holding suit on a receivable earned post-filing is a core proceeding). And of course § 157 makes it clear that its list of core proceedings is non-exclusive, by stating that core proceedings "include, but are not limited to" the specific proceedings set forth.

We nevertheless hold that the adversary proceedings before us are non-core proceedings which are related to a case under title 11, within the meaning of § 157(c)(1). We agree with much of the reasoning of the many decisions holding that receivable cases are not core proceedings. *See, e.g., George Woloch Co., Inc. v. Longview Capital Plastic Pipe, Inc. (In re George Woloch Co., Inc.),* 49 B.R. 68 (E.D. Pa.1985); *Earle Industr. Inc. v. Bond Gen. Contracting, Inc. (In re Earle Industr., Inc.),* 71 B.R. 919 (E.D.Pa.1987); *Century Brass Products, Inc. v. Millard Metals Service Center, Inc. (In re Century Brass Products, Inc.),* 58 B.R. 838 (Bankr. D.Conn.1986); 1 *Collier on Bankruptcy,* § 3.01[2][b](iv) (15th ed. 1988); Greenfield, *The National Conference's Position on the Court System Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, and Suggestions for Rule Promulgation,* 23 Harv. J. on Legis. 357, 365 (1986). Based as they are upon events occurring prior to the Chapter 11 filing, the present proceedings cannot be regarded as interwoven with a recognized administrative action. They are different, for example, from a counterclaim to a claim filed in bankruptcy, which Congress has determined is a core proceeding. *See* § 157(b)(2)(C). The analogy to the sale of estate property is weak. Both of the present actions are contested, and indeed one defendant has counterclaimed. They therefore involve breach of contract issues

indistinguishable from those involved in *Marathon*. Nor are they aided by the somewhat independent course charted by the Supreme Court since *Marathon*. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245 92 L.Ed.2d 675 (1986) (adjudication of state law counterclaims before Commodity Futures Trading Commission upheld by reason of control retained by district court, over dissent of Justice Brennan, the author of the plurality opinion in *Marathon*); *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed. 2d 409 (1985) (binding arbitration of disputes among participants in federal pesticide registration program upheld despite limited judicial review and absence of compelling public rights). It may be that an uncontested collection case should be viewed as a core proceeding, but that is not before us. It also may be that a clear decision of Congress to make all receivable cases core proceedings because of their close nexus to liquidation of the estate would have been constitutionally permissible; one of the factors to be considered is the concerns which motivated Congress to depart from the requirements of Article III. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986). We are here confronted with only general statutory language and no expression of Congressional concern regarding this type of adversary proceeding.

The Debtor's attempt to squeeze the claim against Essex Builders Company, Inc. into § 157(b)(2)(C) seeks to place a square peg into a round hole. That provision includes as a core proceeding "counterclaims by the estate against persons filing claims against the estate." Essex filed its counterclaim to the Debtor's complaint, not the reverse; Essex has filed no independent claim against the estate.

Not content with a determination that these proceedings are non-core, the defendant Welch Group, Inc. argues that its proceeding is not "related" to a case under title 11. This would mean that the district court has no jurisdiction of the proceeding under 28 U.S.C. § 1334(b) and the proceed-

ing is therefore not included in the July 12, 1984 order of the District Court of Massachusetts referring all related proceedings to this Court. Section 1334(b), enacted in 1984 by the BAFJ, has little legislative history; its language originally appeared in 28 U.S.C. § 1471(b) which was enacted as part of the Bankruptcy Reform Act of 1978. The legislative history of § 1471(b) indicates an intent on the part of Congress to make a broad jurisdictional grant. *Kelley v. Nodine Mortgage Co. (In re Salem Mortgage Co.)*, 783 F.2d 626, 633 (6th Cir. 1986). Collier takes the position that related proceedings include all causes of action owned by the debtor that become property of the estate. *See* 1 *Collier on Bankruptcy*, § 3.01[1][c][iv]. The decisions favor including among related proceedings all causes of action except those having an extremely tenuous relationship with the estate. *See, e.g., Kelley v. Nodine Mortgage Co. (In re Salem Mortgage Co.)*, at 634 (1986). These proceedings are related proceedings under either analysis.

## II.  RIGHT TO JURY TRIAL

■ Because of the related, non-core nature of these proceedings, there can be no doubt that the Seventh Amendment entitles the defendants to trial by jury. We are not here concerned with possible emanations from *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), where based partly upon the equitable nature of bankruptcy proceedings the court denied jury trial rights in a preference case brought under the Bankruptcy Act of 1898. The defendant there had filed its own claim, an action which is clearly a part of the estate's administration; the court viewed the trustee's claim as closely linked to the process of claim allowance. Under the present Bankruptcy Code, the courts are divided on the question of whether there is a right to a jury trial in such core proceedings as preference or fraudulent transfer cases where the defendant has not previously filed a claim. *Compare Nordberg v. Granfinanciera, S.A. (In re Chase & Sandborn Corp.)*, 835 F.2d 1341 (11th Cir.1988) (no right to jury trial in fraudu-

lent transfer case seeking money judgment because of equitable nature of fraudulent transfer claim and of core proceedings in bankruptcy), *cert. granted sub. nom. Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988); *Huffman v. Perkinson (In re Harbour),* 840 F.2d 1165 (4th Cir.1988) (no right to jury trial on § 547 preference claims or §§ 548 and 544(b) fraudulent transfer claims); *Katchen v. Landy* and the BAFJA have vitiated *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)); with *In re Kenval Marketing Corp.,* 65 B.R. 548 (E.D.Pa. 1986) (defendant entitled to jury trial in preferential or fraudulent transfers of money by Chapter 11 debtor); *Hassett v. Weissman (In re O.P.M. Leasing Services, Inc.),* 48 B.R. 824 (S.D.N.Y.1985) (defendant entitled to jury trial in an action for damages resulting from a fraudulent transfer).

■ The present proceedings fall outside the sweep of *Katchen* because, as discussed, they do not lie at the core of bankruptcy administration. General principles unrelated to bankruptcy must therefore determine whether the defendants may have a jury. These principles are easily stated and applied here. Seventh Amendment rights are determined with reference to the nature of the issues to be tried and the character of the overall action, which involves three factors: (1) the custom concerning the particular action prior to the merger of law and equity, (2) the remedy sought, and (3) the practical abilities and limitations of juries. *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). These breach of contract actions would never have been tried in a court of equity, they seek only the legal remedy of damages, and they present no issues that would tax the abilities of a jury.

### III. POWER OF BANKRUPTCY COURT TO CONDUCT JURY TRIAL UNDER § 157(c)(1) AND ADVISABILITY THEREOF

A number of courts have held that a bankruptcy judge has the power to conduct a jury trial, but these decisions involve core proceedings. Many of them rely upon either former B.R. 9015, which contained the procedure for the conduct of a jury trial in the bankruptcy court, or former 28 U.S.C. § 1480, which preserved in the bankruptcy court any existing right to trial by jury. *See, e.g., Hassett v. Weissman (In re O.P. M. Leasing Services, Inc.),* 48 B.R. 824 (S.D.N.Y.1985); *Lombard–Wall, Inc. v. New York City Housing Dev. Corp.,* 48 B.R. 986 (S.D.N.Y.1985); *George Woloch Co., Inc. v. Longview Capital Plastic Pipe, Inc. (In re George Woloch Co., Inc.),* 49 B.R. 68 (E.D.Pa.1985). Bankruptcy Rule 9015 was repealed in 1987. The official comment states that the reason for the repeal was to prevent the rule from being relied upon as support for the substantive power of a bankruptcy judge to conduct a jury trial, and that the existence of this power should be determined by the courts without regard to a procedural rule. Section 1480 has been impliedly repealed by the BAFJA's enactment of 28 U.S.C. § 1411 which preserves the right to trial by jury in personal injury and wrongful death claims, over which the bankruptcy court has no jurisdiction. Therefore, in core cases, the statutes and rules neither permit nor prohibit jury trials in bankruptcy courts. The Supreme Court will soon decide in *Granfinanciera* whether the Seventh Amendment mandates a jury trial in a fraudulent transfer case seeking money damages.

In non-core cases such as this, the applicable statute can be interpreted as prohibiting jury trials in bankruptcy courts. Section 157(c)(1) governs the trial of a non-core case. It speaks only of the findings of the bankruptcy judge, making no reference to a jury verdict, and states in part:

In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to

which any party has timely and specifically objected.

The procedure to be followed under the statute is set forth in B.R. 9033, which is derived from Rule 72(b) F.R.Civ.P. governing objections to a recommended disposition by a magistrate.[1] Because for reasons of practicality we conclude below that a jury trial of these adversary proceedings should not be held here, we will not pass on the power of the Court to conduct one. The statute would seem to make that power doubtful.

Assuming for discussion that a bankruptcy judge may conduct a jury trial under § 157(c)(1), the jury's verdict should have no greater effect than the fact finding of a bankruptcy judge in a bench trial. Although juries may be considered fungible, judicial powers under Article I and III certainly are not. Any verdict in the bankruptcy court would therefore be advisory only, subject to review *de novo* in the district court. In light of these considerations, most courts have held that jury trials in § 157(c)(1) proceedings should take place in the district court because to hold them in the bankruptcy court, assuming it has the power, would be a waste of judicial resources. *See, e.g., Mohawk Industr., Inc. v. Robinson Industr., Inc.,* 46 B.R. 464, 466 (D.Mass.1985); *George Woloch Co., Inc. v. Longview Capital Plastic Pipe, Inc. (In re George Woloch Co., Inc.),* 49 B.R. 68 (E.D.Pa.1985); *Mauldin v. Peoples Bank of Indianola, (In re Maudlin),* 52 B.R. 838 (Bankr.N.D.Miss.1985); *Pied Piper Casuals, Inc. v. Ins. Co. of State of Pennsylvania,* 72 B.R. 156 (S.D.N.Y.1987); *Craig v. Air Brake Controls, Inc. (In re Crabtree),* 55 B.R. 130 (Bankr.E.D.Tenn.1985); *Morse Elec., Inc. v. Logicon, Inc. (In re Morse Elec. Co., Inc.),* 47 B.R. 234 (Bankr. N.D.Ind.1985); *In re Smith–Douglass, Inc. v. Smith (In re Smith–Douglass, Inc.),* 43 B.R. 616 (Bankr.E.D.N.C.1984).

In *Price–Watson Co. v. Amex Steel Corp., (In re Price–Watson Co.),* 66 B.R. 144 (Bankr.S.D.Tex.1986) the court favored holding jury trials in the bankruptcy court. The court stressed the difference between *de novo* review and trial *de novo,* and concluded that it would be a rare case when the district court would require a second jury trial. It is of course true that B.R. 9033 does not mandate a new trial; it requires only that the district judge review those portions of the record related to a proposed finding to which an objection has been made in order to determine whether he wishes to "accept, reject or modify" the proposed finding. Any review of a jury's verdict would necessarily be governed by the same principles. The decisions cited were handed down before the 1987 passage of B.R. 9033; many seem to assume that an entire new jury trial would be required. It is also true that the district judge is unlikely to reject a verdict which is warranted by the evidence. He is, nevertheless, required to review the record *de novo.* If he believes that a verdict is incorrect, he should reject it in order to discharge his duties properly under B.R. 9033. It is here where the procedures following a jury trial and bench trial diverge. If a bench trial has been conducted in the Bankruptcy Court, the district judge could choose to modify a finding without the need to hear further evidence on the point. Where there has been a jury trial, however, Seventh Amendment rights mandate that a second jury trial be held to change the verdict. Even when this is done, arguments can be made that the Seventh Amendment is violated by modification of a verdict through a second jury trial held at the discretion of a judge, or even by the potential for such modification.

In summary, a second jury trial is unlikely but is possible. The potential for one poses such doubts under the Seventh Amendment and such potential for waste-

---

1. B.R. 9033 provides in part:
   (d) Standard of Review. The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

ful duplication of the judicial process, beyond the procedure required by § 157(c)(1), that a jury trial in this Court should be avoided.

## IV. DISPOSITION OF THESE ADVERSARY PROCEEDINGS

Debtor's counsel, who of course asserts that the defendants owe the full amounts sought, informs the Court that these causes of action are among the largest of the Debtor's accounts receivable, and that the Debtor needs the funds for its Chapter 11 reorganizational efforts. Counsel argues that those efforts will be frustrated if the present proceedings are dismissed, asserting that it will take years in the state courts to bring them to a conclusion. The court has an obligation to manage this Chapter 11 case and see that it proceeds rather quickly to a confirmed Chapter 11 reorganization plan or, if that is not feasible, that it be dismissed or converted to Chapter 7 in order not to risk prejudice to creditors while it languishes here. *United States Association of Texas v. Timbers of Inwood Forest Assoc., Ltd. (In re Timbers of Inwood Forest Associates, Ltd.),* 808 F:2d 363, 371–72 (5th Cir.1987), aff'd 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The Debtor shows some potential for a successful reorganization. If the defendants owe it substantial sums, it would be tragic that reorganization be frustrated by court delay. If the debts are not owed, the Debtor should learn this soon so as to exclude them in its reorganizational planning. Bankruptcy courts are accustomed to timing the disposition of adversary proceedings with these considerations in mind.

We will not dismiss these core proceedings, or abstain from hearing them under 28 U.S.C. § 1334(c)(1) assuming we have abstention perogatives under that statute. Few cases are actually tried; most are settled and some are resolved by dispositive rulings prior to trial. We will retain the proceedings for speedy pretrials and interlocutory rulings, and for proposed rulings upon any dispositive motions. A bankruptcy judge may adjudicate interlocutory matters under § 157(c)(1); the statute preserves only "final" orders for entry by the district judge, and its procedure would be unworkable if the district judge had to adjudicate interlocutory matters. *Vantage Dev. & Management Corp. v. X–Alpha Int'l, Ltd., (In re Kennedy),* 48 B.R. 621 (Bankr.D.Ariz.1985); *Lesser v. A–Z Assoc. (In re Lion Capital Group),* 46 B.R. 850, 853–54 (Bankr.S.D.N.Y.1985). We will transfer the proceedings to a district judge for trial when and if they are in a trial posture. See *Mohawk Industr. Inc. v. Robinson Industr. Inc., supra.* This procedure will discharge our obligation to manage the Chapter 11 case by assuring the availability of an early trial; it will also reduce to a minimum the burden placed upon the district judge. The Court reserves the right to transfer the proceedings to the district judge before they are ready for trial if considerations of court calendars indicate that an early transfer would expedite adjudication. It is of course possible, although we place no reliance on the possibility, that the parties may resolve the problem by consenting to the proceedings being adjudicated in this Court under § 157(c)(2), either by bench or jury trial.

The motions to dismiss are accordingly denied.